Commonwealth of Pennsylvania, Pennsylvania Higher Education Assistance Agency *v.* Abington Memorial Hospital et al., Appellants.
Pennsylvania Association of Colleges and Universities, Intervening Appellee.

Argued March 2, 1976, before President Judge Bow-
man and Judges Crumlish, Jr., Wilkinson, Jr., Men-
cer, Rogers and Blatt. Judge Kramer did not partici-
pate.

*James H. Stewart, Jr.,* with him *Nauman, Smith,
Shissler & Hall,* for appellant.

*John D. Killian,* with him *Robert W. Barton,* and *Kil-
lian & Gephart,* for appellees.

*G. Thomas Miller,* with him *F. Murray Bryan,* and *McNees, Wallace & Nurick,* for intervening appellee.

OPINION BY JUDGE MENCER, April 22, 1976:

Abington Memorial Hospital and 50 other hospitals providing nursing school programs in this Commonwealth (appellants) appeal to this Court from an order of the Board of Directors of the Pennsylvania Higher Education Assistance Agency (PHEAA) which denied to appellants financial assistance benefits provided by the terms of The Institutional Assistance Grants Act (Act), Act of July 18, 1974, P. L. 483, *as amended,* 24 P.S. §5181 et seq.[1]

Our scope of review in this appeal is prescribed by Section 44 of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, *as amended,* 71 P.S. §1710.44. Therefore, the adjudication of PHEAA must be affirmed unless it is not in accordance with law or unless it constitutes an arbitrary, capricious, or unreasonable determination due to the absence of substantial evidence to support its findings.

Initially, appellants contend that PHEAA committed an error of law when it concluded that hospitals providing nursing programs do not conform to the restrictions imposed upon institutions seeking the benefits of the grant program. With this we cannot agree.

Section 5 of the Act, 24 P.S. §5185, clearly limits the allotment of assistance grants to eligible institutions as defined in Section 3, 24 P.S. §5183. Section 3 sets forth the definition for an eligible institution as follows:

" 'Eligible institution' shall mean an independent institution of higher education located in and chartered by, the Commonwealth, which is neither a

---

1. The Pennsylvania Association of Colleges and Universities also appeared in this litigation and presently is before this Court as an intervenor appellee.

State-owned institution, State-related institution nor a community college, which is operated not for profit, which is determined by the agency not to be a theological seminary or school of theology or a sectarian and denominational institution and which is approved by the agency for assistance grants pursuant to the provisions of this act."

The findings below reveal that appellants are not directly connected with the Commonwealth, are not operated for profit, and are not denominational or sectarian. At issue before us then is merely the proper construction of the phrase "an independent institution of higher education located in and chartered by, the Commonwealth."

In its adjudication, PHEAA interpreted the word "independent" to modify the word "chartered" and therefore denied assistance benefits to appellants because their nursing programs were not chartered independently from their hospital programs. We reject the manner of this construction, for our reading of the statute as a whole leads us to the conclusion that the word "independent" stands merely in contraposition to the word "public."[2] It does not describe charters but merely relates to the control exercised over an institution by the Commonwealth. Since PHEAA specifically found appellants to be free of state control, appellants cannot now be precluded from assistance benefits merely because of the independence restriction.

However, we are compelled to deny benefits to appellants for they are not institutions of higher education. On first reflection, this conclusion may seem unreasonable, for who would deny, barring a statutory declaration to the contrary, that nursing schools provide for higher education? Nevertheless, when one closely examines the phrase "institution of higher education," it

---

2. See specifically the first paragraph of Section 2 of the Act, 24 P.S. §5182, page 5 *infra.*

becomes abundantly clear that hospitals operating nursing schools are not institutions of higher education. Hospitals are institutions providing health care. The mere presence of a nursing program does not change a hospital's status. A nursing program is merely peripheral to the hospital's basic function for which it was chartered— that of a health care provider. This construction, of course, results in benefits being denied because the nursing schools here are not separately chartered. We have reached the same result as PHEAA but by different reasoning.

Appellants strenuously argue that such a construction of this particular provision of the Act violates the Fourteenth Amendment to the Constitution of the United States and Article 3, Section 32 of the Pennsylvania Constitution, by denying to appellants equal protection of the law and by setting forth invalid classifications not based on real and substantial differences which may be reasonably related to the purpose of the law.

The test for determining the validity of legislative classifications under Article 3 of the Pennsylvania Constitution is not significantly different from the test concerning violations of equal protection in legislative enactments under the Fourteenth Amendment to the United States Constitution. *Goodman v. Kennedy,* 459 Pa. 313, 329 A. 2d 224 (1974). The law in both matters may be summarized as follows.

Although it is true, of course, that the General Assembly is generally prohibited from passing special legislation, it has long been established that "[l]egislation for a class distinguished from a general subject is not special but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine the courts cannot declare the classifica-

tion void, though they may not consider it to be on a sound basis. The test is, not wisdom, but good faith in the classification." *Seabolt v. Commissioners of Northumberland County*, 187 Pa. 318, 323, 41 A. 22, 23 (1898).

"The purpose of Article III, §7 [amended and renumbered as §32] was to 'put an end to the flood of privileged legislation for particular localities and for private purposes which was common in 1873. The Section said what it meant. It was aimed at laws that were in the proper sense local and special. . . . [It] was not intended to prevent the legislature from meeting diverse needs . . . .' *Haverford Twp. v. Siegle,* 346 Pa. 1, 6, 28 A. 2d 786, 788 (1942)." *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors*, 418 Pa. 520, 540, 211 A. 2d 487, 498 (1965).

"Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 425-26 (1961).

Keeping foremost in our minds the well-settled presumption of the constitutionality of Acts of the General Assembly, *Commonwealth v. Staley,* 21 Pa. Commonwealth Ct. 193, 344 A. 2d 748 (1975), our duty here is to turn to the legislation itself in search of its reasonable purpose, nature, and effect. *See Chartiers Valley Joint Schools v. Allegheny County Board of School Directors, supra.*

The legislative findings as revealed in Section 2 of the Act set forth the following:

"The General Assembly has found and hereby declares that:

"(a) The Commonwealth is committed to the development and preservation of a planned and diverse system of higher education which encompasses both public and independent institutions. The percentage of students attending independent institutions in the Commonwealth is forty-two per cent (42%), which figure is much higher than the national average of twenty-four per cent (24%). Independent institutions make a significant contribution to higher education in the Commonwealth and it is in the public interest to facilitate optimum utilization of all higher education resources in the Commonwealth.

"(b) Tuition and fees charged to students by independent institutions, even when financed by various types of student financial aid, do not cover the cost of education. Many independent institutions are, therefore, presently faced with serious financial difficulties. These difficulties inhibit their ability to provide higher education to the Commonwealth students and, therefore, impair the provision of higher education in the Commonwealth and increase the burden on public institutions.

"(c) The institutional assistance grants on behalf of Pennsylvania scholarship students attending independent institutions authorized herein are designed to assure maximum educational choice by preserving the quality of independent institutions and will tend to moderate the costs charged to students at independent institutions."

Surely the body of the Act reflects this policy. Additionally, it cannot be said that that policy, or the Act as a whole, is arbitrary or irrelevant to the achievement of a valid State objective.

The classification here, between institutions of higher education and institutions with some programs of higher education incidental to their other main functions, is premised upon a reasonable and genuine distinction. Likely, one reason for the classification was the General Assembly's fear of institutional entanglements that would prevent the proper desired use of the assistance grants. We conclude that the basis for the distinction is real, not imaginary, and can be premised on genuine reasoning.

Finally, we note that appellants have raised various objections concerning the alleged impropriety of the procedures employed and actions taken by the PHEAA during its review of appellants' petitions. We decline to examine these objections because the vital issue before us in this appeal is one of law, involving the interpretation of the applicable statutory language. Those administrative findings presently relevant to our inquiry were directly adopted by the PHEAA from a prior stipulation of counsel presented before the hearing examiner. We conclude that intervening administrative deficiencies, if any, were cured by the later adoption—in most instances, a verbatim adoption—of relevant portions of the stipulation. Actually, appellants do not directly contest the findings themselves but merely, in essence, urge us to reverse the PHEAA for its alleged improper procedures. With the essential facts of this case uncontested, we will not do so.

We therefore issue the following

### ORDER

And now, this 22nd day of April, 1976, the appeal of the Abington Memorial Hospital and the 50 other hospitals whose names appear on a list attached to the appeal filed from the order of the Board of Directors of the Pennsylvania Higher Education Assistance Agency is hereby dismissed.