478 Pa. 514 (1978)
387 A.2d 440
COMMONWEALTH of Pennsylvania, Pennsylvania HIGHER EDUCATION ASSISTANCE AGENCY, Appellee,
and
Pennsylvania Association of Colleges and Universities, Intervening-Appellee,
v.
ABINGTON MEMORIAL HOSPITAL et al., Appellants.
Supreme Court of Pennsylvania.
Argued October 20, 1977.
Decided April 28, 1978.
Rehearing Denied June 6, 1978.
*515 *516 *517 *518 James H. Stewart, Jr., Harrisburg, for appellants.
John D. Killian, Robert W. Barton, Harrisburg, for appellee.
G. Thomas Miller, David B. Disney, Harrisburg, for intervening appellee.
Before EAGEN, O'BRIEN, POMEROY, ROBERTS, NIX, MANDERINO and PACKEL, JJ.

OPINION
PER CURIAM.
The Court being equally divided, the order of the Commonwealth Court is affirmed.
EAGEN, C.J., filed an opinion in support of affirmance in which O'BRIEN, J., joined.
MANDERINO, J., filed an opinion in support of reversal in which ROBERTS, J., joined.
POMEROY, J., did not participate in the decision of this case.
NIX, J., and PACKEL, former J., did not participate in the consideration or decision of this case.

*519 OPINION IN SUPPORT OF AFFIRMANCE
EAGEN, Chief Justice.
The Institutional Assistance Grants Act (IAGA)[1] enables an "eligible institution," as defined therein, to receive a grant of up to $400 for each attending student who receives a Pennsylvania State Scholarship and authorizes the Pennsylvania Higher Education Assistance Agency (PHEAA) to determine which institutions are eligible. Section 3 of the IAGA provides the applicable definition:
"`Eligible institution' shall mean an independent institution of higher education located in and chartered by, the Commonwealth, which is neither a state-owned institution, State-related institution nor a community college, which is operated not for profit, which is determined by the agency not to be a theological seminary or school of theology or a sectarian and denominational institution and which is approved by the agency for assistance grants pursuant to the provisions of this act."
24 P.S. § 5183 (Supp. 1977-78).
Interpreting this statutory definition, the PHEAA administrator determined that the nursing schools operated by appellant hospitals were ineligible for IAGA assistance and notified them as follows:
"Act 174 defines `eligible institution' as one which is `independent.' After review of the Eligibility Determination Survey, the Agency has determined that your institution of higher education is not independently incorporated, since the hospital rather than the educational institution is incorporated and the operations of the educational institution are governed by the board of trustees of the hospital (or medical center, health center, or association) with which the school of nursing is affiliated."
*520 Appeals from these determinations were taken to the PHEAA Board of Directors, and testimony was taken before an independent hearing examiner. The record was augmented by counsel's stipulations of fact and by documents deemed relevant to the legislative history of the IAGA and the administrative determinations of ineligibility. The examiner recommended to the Board that the nursing schools be determined eligible, and PHEAA counsel submitted alternative findings of fact and conclusions of law. Before the Board rendered its decision, the Pennsylvania Association of Colleges and Universities (PACU) sought and received permission to intervene as a party on behalf of those of its members which would be affected by the Board's decision. On July 31, 1975, the Board found the nursing schools in question ineligible for IAGA grants on the ground that they were not independent institutions of higher education.
Timely appeals from the Board's adjudication were then taken to the Commonwealth Court and there consolidated. On April 22, 1976, the Commonwealth Court entered an order dismissing the appeals on the ground that "hospitals operating nursing schools are not institutions of higher education." Commonwealth, Pennsylvania Higher Education Assistance Agency v. Abington Memorial Hospital, 24 Pa.Cmwlth. 352, 356, 356 A.2d 837, 839 (1976). We allowed this appeal.
Appellants argue that they are eligible institutions within the meaning of the IAGA and that a contrary construction of the act unconstitutionally deprives them of equal protection of the law. I would reject both contentions.
Since the only issues presented are questions of statutory and constitutional interpretation, and since the PHEAA is empowered to determine which institutions are eligible for IAGA grants "pursuant to the provision of this act,"[2] an appellate court must affirm the PHEAA's adjudication rendering appellants ineligible unless it determines that the adjudication was not in accord with law or was in *521 violation of appellants' constitutional rights. Administrative Agency Law, Act of June 4, 1945, P.L. 1388, § 44, 71 P.S. § 1710.44. This Court has observed that "the contemporaneous construction of a statute by those charged with its execution and application, especially when it has long prevailed, is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it is clear that such construction is erroneous." Federal Deposit Insurance Corp. v. Board of Finance and Revenue of Commonwealth, 368 Pa. 463, 471, 84 A.2d 495, 499 (1951). Instantly, the administrative construction at issue has not long prevailed but was formulated for the first time in the context of this case. As the Supreme Court of the United States has observed: "Undoubtedly questions of statutory interpretation, especially when arising in the first instance in judicial proceedings, are for the courts to resolve, giving appropriate weight to the judgment of those whose special duty is to administer the questioned statute. National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 130-31, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944).
Our aim in statutory construction, of course, is to ascertain and effectuate the intention of the legislature; to the extent the legislative definition is not explicit, we may also consider, among other matters, the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, the former law, if any, including other statutes upon the same or similar subjects, the consequences of a particular interpretation, the contemporaneous legislative history, and the legislative and administrative interpretations of the statute. Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1921 (Supp. 1977-78). Of particular relevance for our purposes are the "legislative findings" contained in section 2 of IAGA:
"The General Assembly has found and hereby declares that:
"(a) The Commonwealth is committed to the development and preservation of a planned and diverse system of *522 higher education which encompasses both public and independent institutions. The percentage of students attending independent institutions in the Commonwealth is forty-two per cent (42%), which figure is much higher than the national average of twenty-four per cent (24%). Independent institutions make a significant contribution to higher education in the Commonwealth and it is in the public interest to facilitate optimum utilization of all higher education resources in the Commonwealth.
"(b) Tuition and fees charged to students by independent institutions, even when financed by various types of student financial aid, do not cover the cost of education. Many independent institutions are, therefore, presently faced with serious financial difficulties. These difficulties inhibit their ability to provide higher education to the Commonwealth students and, therefore, impair the provision of higher education in the Commonwealth and increase the burden on public institutions.
"(c) The institutional assistance grants on behalf of Pennsylvania scholarship students attending independent institutions authorized herein are designed to assure maximum educational choice by preserving the quality of independent institutions and will tend to moderate the costs charged to students at independent institutions."
24 P.S. § 5182.
The PHEAA based its determination that the nursing schools in question are not eligible institutions on the fact, stipulated by counsel, that the schools are not independently chartered but are operated pursuant to charters granted to their parent hospitals.[3] The agency thus interpreted the statutory definition of an eligible institution as "an independent institution of higher education . . . chartered by. . . the Commonwealth" to require that the institution be independently chartered as an institution of higher education in order to qualify; it concluded that the nursing schools, though institutions of higher education, were not *523 independent institutions of higher education. The Commonwealth Court, on the other hand, noting that in section 2 of the IAGA, quoted above, "independent" stood merely in contraposition to "public," concluded that the word did not refer to a separate charter but only to a lack of control by the Commonwealth and that, therefore, assistance could not be denied merely because of the lack of a separate charter. The court, however, held that appellants, hospitals operating nursing schools, are not institutions of higher education, since "[a] nursing program is merely peripheral to the hospital's basic function for which it was chartered  that of a health care provider." 24 Pa.Cmwlth. at 356, 356 A.2d at 839. Although appellants agree with the Commonwealth Court's interpretation of "independent," they contend they are nursing schools which have instituted their appeals under the corporate names they share with their respective hospitals, and that the Commonwealth Court erred in regarding them as hospitals; they urge that the court's conclusion they are not institutions of higher education is contrary to both the stipulations of counsel and the findings of the PHEAA and is inconsistent with the PHEAA's approval of them as institutions of higher education whose students may be eligible for state scholarship assistance.[4]
I agree with the Commonwealth Court that the legislature in its definition intended "independent" merely to mean "non-public." Even assuming, however, that the nursing schools in question are indeed institutions of higher education, or even independent institutions of higher education in the statutory sense, I conclude that neither the nursing schools nor their parent hospitals are "independent institutions[s] of higher education . . . chartered by. . . the Commonwealth," that is, neither are chartered as institutions of higher education. The nursing schools themselves are not separately chartered, so that the only chartered institutions here involved are hospitals, so chartered, one of whose functions, but not the primary one, is to operate nursing schools.
*524 Plainly the purpose of the IAGA is to provide direct institutional assistance, not to all institutions of higher education located in Pennsylvania, but only to "eligible" institutions as defined in the statute. One of the definitional requirements is that the institution in question be chartered. It is well-settled that a chartered institution derives its legal existence and identity from its charter, and that its fundamental nature is to be ascertained from the nature of its charter. See, e.g., Dartmouth College v. Woodward, 17 U.S. 518, 4 Wheat. 518, 4 L.Ed. 629 (1819). It is thus reasonable to conclude that the legislature intended the PHEAA to consider the nature of the institutional charter in determining whether the institution actually receiving this direct institutional assistance is indeed an institution of higher education. Since the primary aim of the IAGA is to assist not students but educational institutions which meet the statutory requirements for eligibility, even though the amount of assistance paid to each eligible institution is based upon the number of Pennsylvania State scholarship students attending, it is immaterial that for scholarship purposes the PHEAA has approved the nursing schools in question as institutions of higher education. Students may and do receive State scholarships while attending institutions of their choice plainly ineligible for IAGA assistance, including institutions outside the Commonwealth; the primary purpose of such scholarships is to aid students, not institutions.[5]
*525 Therefore, I also agree with the Commonwealth Court that the institutions whose IAGA eligibility is at issue in this appeal are the hospitals which operate the nursing schools, not the nursing schools which, lacking their own charters, are themselves ineligible.[6] This Court has not been called upon previously to determine whether a chartered hospital which operates a school of nursing is a chartered institution of higher education, but my conclusion that it is not is supported by a comparable decision of the Supreme Court of California in Lutheran Hospital Society of Southern California v. Los Angeles County, 25 Cal.2d 254, 153 P.2d 341 (1944). At issue in that case was whether a hospital which operated a nursing school qualified for a property-tax exemption granted by the California Constitution to "any educational institution of collegiate grade." The Constitution did not define "educational institution of collegiate grade," but in the state tax code the legislature defined it inter alia as "an institution incorporated as a college or seminary of learning under the laws of this State." The hospital argued that this legislative limitation was unconstitutional, but the Court, rejecting this contention, stated:
"It may not . . . be said that the Legislature has exceeded its power in supplying a definition which would exclude a school of nursing when, as here, it is conducted as an incident to hospital operations. . . . Under our Constitution . . . the words `educational institution,' used in the ordinary and commonly accepted sense, do not include a general hospital which has, as an incident to its main purpose and usefulness, an educational feature. Furthermore, it is apparent that in the ordinary acceptation of the term, a hospital is not considered as an `educational institution of collegiate grade' or as a `college or seminary of learning.'"
*526 25 Cal.2d at 257, 153 P.2d at 343-44. Similarly, I conclude that a chartered hospital which operates a school of nursing is not an eligible institution of higher education as defined by the IAGA. Compare Gilden Appeal, 406 Pa. 484, 178 A.2d 562 (1962), wherein, after examining the nature of the institution as a whole, we held that a school for handicapped and exceptional children was within a special zoning exception for "educational institutions" and was not more akin to a prohibited hospital or sanitarium.[7]
My conclusion is further supported by the legislative history contained in this record. The record reveals that this legislation was originally drafted for legislative consideration by counsel for intervening appellee, the PACU, and reviewed by PHEAA's executive director. Subsequently, the legislative staff asked the executive director to prepare a preliminary list of institutions which might be eligible for assistance together with estimates as to the amount of assistance each institution might receive. The preliminary list contained only two and four-year colleges and contained no schools of nursing whatsoever. The legislative debates on the proposed measure in both houses of the General Assembly referred only to colleges and universities and not to schools of nursing. Further, uncontradicted testimony at the administrative hearing indicated that if nursing schools had been regarded as independent institutions of higher education, the state and national percentages of students attending such institutions would have been different from the 42% and 24% figures contained in the "Legislative Findings" in section 2(a) of the IAGA, 24 P.S. § 5182(a), supra. Thus, the legislative history suggests that the legislature did not intend that chartered hospitals which operate schools of nursing be regarded as institutions of higher education eligible for IAGA assistance.
Nevertheless, the legislature left it to the PHEAA to determine which institutions would qualify for assistance *527 under the statutory definition. Pursuant to this responsibility, the agency sent questionnaires to various schools of nursing which had expressed an interest in participating in the program, including those operated by appellants. Although appellants were found ineligible for IAGA assistance because they lacked educational charters, the PHEAA did approve applications in behalf of certain hospital nursing schools, those affiliated with the Medical College of Pennsylvania, the University of Pennsylvania, Thomas Jefferson College of Allied Health Sciences, and Hahnemann Medical College and Hospital, all of which are chartered institutions of higher education, and Robert Packer Nursing School, which has a separate charter apart from that of its parent hospital. Appellants contend that educationally and in terms of administrative relationship with their affiliated hospitals, the nursing schools they represent are essentially indistinguishable from the nursing schools receiving IAGA assistance, and that the disparate treatment accorded them solely on the basis of the nature of their institutional charters has deprived them of equal protection of the law.[8] I disagree.
As the Supreme Court of the United States has stated:
". . . although an individual's right to equal protection of the laws `does not deny . . . the power to treat different classes of persons in different ways[;] . . [it denies] the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 *528 (1920).' Reed v. Reed, 404 U.S. 71, 75-76, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971)." [Footnote omitted.]
Johnson v. Robison, 415 U.S. 361, 374-75, 94 S.Ct. 1160, 1169, 39 L.Ed.2d 389 (1974). In my view, the distinction between appellants and the comparable institutions found eligible for IAGA assistance is reasonable and rests upon a ground of difference which has a fair and substantial relation to the object of the legislation. As indicated above, the object of the IAGA is to provide direct institutional assistance to independent institutions of higher education located and chartered in Pennsylvania. It is thus reasonable for the PHEAA, empowered by the legislature to determine which institutions are eligible to share in the limited funds appropriated for IAGA assistance,[9] to look to the nature of the institutional charter to determine whether the institution which would actually receive and control the funds is itself an institution of higher education. Although the nursing schools operated by appellants unquestionably perform a valuable educational function in the Commonwealth, the pertinent distinction is not between eligible and ineligible nursing schools but between eligible and ineligible institutions, and I conclude that the distinction between appellants and those institutions found eligible for IAGA assistance reasonably and substantially fulfills the statutory purpose of providing direct assistance to independent institutions of higher education.[10] Although there plainly are substantial *529 similarities between appellants and some institutions found eligible for assistance, it is well-settled that a legislative classification need not be perfect and may result in some practical inequalities so long as some reasonable basis exists for the classification. See e.g., Goodman v. Kennedy, 459 Pa. 313, 329 A.2d 224 (1974). Such is the case with the institutional classifications presented instantly.
Accordingly, the order of the Commonwealth Court should be affirmed.
O'BRIEN, J., joins in this opinion.

OPINION IN SUPPORT OF REVERSAL
MANDERINO, Justice.
The Opinion in Support of Affirmance completely ignores the spirit and the letter of the law. The purposes of the Institutional Assistance Grants Act (IAGA) have been clearly stated by the Legislature. The "legislative findings" contained in section 2 of IAGA are:
"The General Assembly has found and hereby declares that:
`(a) The Commonwealth is committed to the development and preservation of a planned and diverse system of higher education which encompasses both public and independent institutions. The percentage of students attending independent institutions in the Commonwealth is forty-two per cent (42%), which figure is much higher than the national average of twenty-four per cent (24%). Independent institutions make a significant contribution to higher education in the Commonwealth and it is in the public interest to facilitate optimum utilization of all higher education resources in the Commonwealth.

*530 `(b) Tuition and fees charged to students by independent institutions, even when financed by various types of student financial aid, do not cover the cost of education. Many independent institutions are, therefore, presently faced with serious financial difficulties. These difficulties inhibit their ability to provide higher education to the Commonwealth students and, therefore, impair the provision of higher education in the Commonwealth and increase the burden on public institutions.

`(c) The institutional assistance grants on behalf of Pennsylvania scholarship students attending independent institutions authorized herein are designed to assure maximum educational choice by preserving the quality of independent institutions and will tend to moderate the costs charged to students at independent institutions.'" (Emphasis added.)
It can readily be seen that the above purposes are concerned with the necessity of maintaining all independent institutions. The distinction made is between public and independent. The purposes clearly state "[it is] in the public interest to facilitate optimum utilization of all higher educational resources in the Commonwealth." (Emphasis added.)
Moreover, the purpose as declared by the Legislature emphasizes that it is students with which the Act is primarily concerned. In Paragraph (b) and Paragraph (c) the emphasis is on the charges to students. The Legislature was certainly not concerned with institutions, but with student charges. The Legislature wished to give students the "maximum educational choice" and stated that it was concerned about the utilization of "all higher educational resources."
The Opinion in Support of Affirmance does not say that the nursing schools in question are not institutions of higher education, but rather that they are not "independent institutions of higher education . . . chartered by . . . the Commonwealth." (Emphasis added.) I am at a loss to understand such reasoning. Is it saying that the nonprofit *531 corporations involved in this appeal who are educating nurses are doing so without that authority being found in their charters? If so, that opinion is clearly in error, for no one disputes in this appeal that the nursing education being provided by the appellants to students is a proper function of the nonprofit corporations and that they are chartered to do exactly what they are doing  educating nursing students.
The IAGA does not state that an institution is ineligible if it is chartered for more than one purpose. The Opinion in Support of Affirmance states that the nursing schools affiliated with the Medical College of Pennsylvania, the University of Pennsylvania, Thomas Jefferson College of Allied Health Services, and Hahnemann Medical College and Hospital, are eligible for assistance because they are "chartered institutions of higher education." The nursing schools involved in this appeal are also conducted by institutions which are legally chartered to provide nursing education to students. The institutions which are receiving aid may also be chartered for other purposes such as research, but that would not disqualify them.
The nursing education being provided by the nonprofit, nonpublic, independent institutions involved in this appeal is not being provided illegally. The institutions are independent institutions of higher education chartered by the Commonwealth to do exactly what they are doing and they are entitled to the benefits of the IAGA.
The affirmance of this order makes sense only if we believe that the IAGA is intended to force certain legally established private nursing schools out of business because of financial pressures while at the same time assisting other private nursing schools. No such intent can be found in the IAGA, and the letter of the law entitles the appellants to the relief requested. I would reverse the order of the Commonwealth Court and order relief to the appellants.
ROBERTS, J., joins in this Opinion in Support of Reversal.
NOTES
[1] Act of July 18, 1974, P.L. 483, No. 174, § 1, et seq., 24 P.S. § 5181, et seq. (Supp. 1977-78). The full title is "An Act authorizing the Pennsylvania Higher Education Assistance Agency to make institutional assistance grants on behalf of Pennsylvania State scholarship students attending independent institutions of higher education in the Commonwealth, and making an appropriation."
[2] See n. 1, supra.
[3] Counsel also stipulated that each nursing school is governed not independently but by the governing body of the parent hospital.
[4] See Act of August 7, 1963, P.L. 549, as amended, § 4(5), 24 P.S. § 5104(5) (Supp. 1977-78).
[5] See Act of January 25, 1966, P.L. (1965) 1546, No. 541, § 1, et seq., 24 P.S. § 5151, et seq. (Supp. 1977-78). This act contains extensive criteria to be utilized by the PHEAA in determining student eligibility, but it provides that "[t]he State scholarship recipient shall be free to attend any approved institution of his choice and apply the scholarship toward the tuition, room, board, books and fees of that institution." 24 P.S. § 5154(a)(6). It defines "approved institution of higher learning" simply as "any institution of higher learning approved by the agency." 24 P.S. § 5153(2). In contrast, section 3 of the IAGA strictly limits, by its definition of "eligible institution," agency approval of institutions for IAGA assistance. The legislative history made part of the record in this case reveals that a proposed amendment by Representative Mullen, which would have channelled assistance through the students rather than directly to the institutions, was defeated.
[6] Although the proceedings before the PHEAA were entitled In Re: Appeals of Hospital Schools of Nursing from Findings of Ineligibility under Act No. 174, the appeals before the Commonwealth Court and this Court were properly taken in the names of the hospitals as legal entities which include their respective nursing schools; the schools have no legal identity apart from their parent institutions. See McConnell v. Apollo Savings Bank, 146 Pa. 79, 23 A. 347 (1892).
[7] "The motif of the [institution] is education of the mind, not its medico-therapeutic treatment except insofar as academic tutoring reaches the mental processes." 406 Pa. at 490, 178 A.2d at 565.
[8] Appellants base their constitutional argument solely on the Fourteenth Amendment to the Constitution of the United States and do not cite the Pennsylvania Constitution.
[9] Counsel have stipulated that the effect of a finding of eligibility for appellants would be to reduce the amount of assistance available for all institutions found to be eligible.
[10] For example, the record makes it clear that in the case of the University of Pennsylvania, it is the parent institution, the university, which receives the assistance grant, not the nursing school. Similarly, if appellants were found eligible, the hospitals would receive the grants rather than their respective nursing schools. Appellants argue that this distinction is immaterial because section 6 of the IAGA, 24 P.S. § 5186, requires eligible institutions to keep their IAGA funds in a separate account and to utilize them only for expenses connected with educational cost. Nevertheless, it is not unreasonable to conclude that hospital nursing schools operating only under a hospital charter are operated mainly for the benefit of and incidental to the operation of the hospitals. In light of IAGA's purpose of providing direct assistance to independent institutions of higher education, it is not unreasonable to distinguish nursing schools not separately chartered which are subservient to parent institutions whose primary purpose is other than education. In my view, the statutory accounting requirement thus does not eliminate the danger of "institutional entanglements" noted by the Commonwealth Court as a reasonable basis for the distinction. 24 Pa.Cmwlth. at 359, 356 A.2d at 841.