## Commonwealth v. Gelbaugh

J. Michael Eakin, Assistant District Attorney, for Commonwealth.

Taylor P. Andrews, Public Defender, for defendant.

SHUGHART, P.J., July 21, 1980—On June 20, 1979 without representation of counsel, defendant pled guilty before a district justice to the summary offense of retail theft, a violation of section 3929 of the Crimes Code, 18 Pa.C.S.A. §3929, for the May 18, 1979 shoplifting of a jacket, valued at $21.95, from Sheaffer Brothers store in Carlisle. Defendant paid a $25 fine, plus costs.

On January 8, 1980 defendant was arrested for the shoplifting of two packages of cigarettes, valued at $1.24, from the Carlisle Food Market. In light of defendant's prior conviction, the district attorney filed an information (124 Criminal 1980) charging defendant with a second degree misdemeanor as provided for in the retail theft statute. Prior to the disposition of the January 8, 1980 of-

fense, defendant was again arrested and charged with retail theft of two T-shirts and a pair of shorts, valued at $12.97, from the Joy Shop located in the M.J. Mall in Carlisle. For this offense an information was filed charging defendant with a third degree felony (315 Criminal 1980).

On June 4, 1980 defendant appeared before this court with a public defender for the January 8, 1980 offense (124 Criminal 1980) at which time it was stipulated that the April 23, 1980 offense (315 Criminal 1980) would be heard at the same time. The public defender stipulated to the fact of the previous summary conviction. It was further stipulated that but for the legal defenses presented, defendant would be found guilty of the retail theft charges contained in 124 Criminal 1980 and 315 Criminal 1980.

It is the contention of defendant that as a result of Baldasar v. Illinois, _____ U.S. _____, 64 L.Ed. 2d 169 (1980), the second offense chronologically (124 Criminal 1980) must be considered as a first offense. It is further contended that the third offense chronologically (315 Criminal 1980) must be considered as a first offense because there was no conviction on the second offense prior to the occurrence of the third offense.

As defendant's first contention it is asserted that defendant's uncounseled guilty plea to the May 18, 1979 summary offense is not a valid conviction for the purpose of enhancing a subsequent retail theft charge to a second degree misdemeanor. In support of this proposition, defendant relies on the Baldasar decision which held that an uncounseled *misdemeanor* conviction could not be used to enhance a subsequent offense to a *felony*. Defendant urges us to extend the Baldasar decision and to apply its

rationale to the case at bar.[1] After careful consideration, we are of the opinion that Baldasar should be limited to the fact situation in which it arose and therefore cannot be extended to encompass the circumstances before us here.

It must be recognized immediately that Baldasar was handed down by a divided court with the five justice plurality being unable to agree on a single rationale. Because of this lack of agreement, we look to Marks v. United States, 430 U.S. 188, 193 (1977), for guidance in determining the actual holding to be drawn from the Baldasar decision. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. . . .' [Citations omitted.]" Thus, Baldasar need not be given broad application.

In Baldasar, defendant's initial uncounseled conviction was for a misdemeanor which had an authorized penalty of up to one year imprisonment. This conviction was then made the basis of enhancement of a subsequent retail theft charge to a felony in accordance with an Illinois statute. Upon

---

1. We are well aware of the ramifications which would be involved by an extension of Baldasar. A sampling of two of the eight district justices in Cumberland County indicates that these two district justices alone have disposed of approximately 135 summary retail theft cases during the first six months of 1980. If we were to adopt the theory advocated by the defendant, each individual appearing at a summary proceeding for retail theft would have to be represented by counsel if the conviction were to be used for enhancement of a second offense. Needless to say, the public defender's staff would have to be expanded in order to provide for defendants to be represented by counsel at retail theft summary proceedings.

conviction on the enhanced retail theft charge, defendant was sentenced to one to three years' imprisonment. It is apparent that Justice Blackmun's concurrence, which was the decisive vote in the 5-4 judgment of the court, turned on the authorized penalty provided for by the Illinois statute for the initial misdemeanor conviction. Justice Blackmun based his concurring opinion on his "bright line" approach to the right to counsel which he previously expressed in dissent in Scott v. Illinois, 440 U.S. 367 (1979). It is his position that if a criminal offense has an *authorized* penalty of *more than* six months' imprisonment or if defendant is actually imprisoned, defendant must have been afforded counsel if the conviction is to be valid. Justice Blackmun reemphasized his "bright line" approach in Baldasar v. Illinois, supra, at ____, 64 L.Ed 2d at 176.

"Petitioner Baldasar was prosecuted for an offense *punishable by more than six months'* imprisonment, and, under my test, was entitled to counsel at the prior misdemeanor proceeding. Since he was not represented by an attorney, that conviction, in my view, is invalid and may not be used to support enhancement. I therefore join the Court's per curiam opinion and its judgment." (Emphasis supplied.)

It is apparent that Justice Blackmun decided as he did because he viewed the initial conviction as being invalid. It is evident that an invalid conviction cannot support enhancement of a subsequent offense.

Implicit in Justice Blackmun's concurrence is the notion that if an uncounseled conviction withstands his "bright line" test, that is, if the autho-

rized penalty is less than 6 months' imprisonment and if there is no actual imprisonment imposed, then he would join the dissenters in Baldasar and hold that the uncounseled conviction could be used for enhancement. Thus, as we interpret the Baldasar decision, the narrow holding on which five justices agree is that an uncounseled *misdemeanor* conviction, where the authorized penalty is greater than *six months'* imprisonment or where imprisonment is actually imposed, may not be used to enhance a subsequent offense to a felony if imprisonment is imposed upon a conviction thereof.

Clearly, the Baldasar decision is inapplicable to the case at bar. Defendant's initial conviction was for a summary offense. She was not imprisoned upon her conviction but sentenced only to pay a fine and costs. Finally, the maximum authorized penalty upon conviction of a summary offense as provided for by section 106(c)(2) of the Crimes Code, 18 Pa.C.S.A. §106(c)(2), is 90 days' imprisonment. Consequently, we do not find that the Baldasar decision precludes the enhancement of the January 8, 1980 offense (124 Criminal 1980) to a misdemeanor nor do we feel compelled to extend Baldasar to reach the result advocated by defendant.

Having decided that the Baldasar decision is not dispositive of the issue of enhancement of the January 8, 1980 (124 Criminal 1980) offense to a second degree misdemeanor, we look to defendant's contention in light of existing Pennsylvania law. It is well within the discretion of the General Assembly to provide for imposition of more severe penalties upon individuals who persist in violating the law. See Com. ex rel. v. Smith, 324 Pa. 73, 187 Atl. 387 (1936). It is apparent to us that the General Assembly deliberately included the enhancement

provisions in the retail theft statute to allow for progressively more severe sanctions upon the habitual shoplifter. The intent of the General Assembly becomes even more apparent when we consider the fact that the predecessor to the present retail theft statute did not include enhancement provisions.[2] The inclusion of enhancement provisions in the present day retail theft statute, 18 Pa.C.S.A. § 3929, is understandable considering the extent of the shoplifting problem.[3]

Our Supreme Court has clearly recognized that a court must effectuate the aim of the legislature in

2. See section 816.1 of the Penal Code of June 24, 1939, P.L. 872, as amended, formerly found at 18 P.S. §4816.1.

3. Shoplifting is draining eight billion dollars a year from U.S. merchants. See Business Week, October 15, 1979, p. 119. The cost to consumers as the result of shoplifting losses and added security to cope with shoplifters is an average boost in retail prices of 2 to 3 cents on each dollar: U.S. News and World Report, December 3, 1979, Volume 87, p. 71. It is estimated that one out of three small businesss go bankrupt because of shoplifting. Id. at 71. Business Week, supra, reports that a skilled shoplifter could be clearing as much as $53,000 per year, all of which is tax free. And only one out of 35 shoplifters is apprehended. See U.S. News and World Report, supra.

In Pennsylvania in 1979, larceny-theft, in which category shoplifting is included, constituted 52.8 percent of the total number of Crime Index offenses reported. Of this category, retail theft made up 11.7 percent of all of the larceny thefts reported. Simple arithmetic reveals to us that retail theft made up 6.18 percent of the total Crime Index offenses reported in our Commonwealth in 1979. It totalled three percent of the value of all property reported stolen or $1,382,981. The value of the items reported stolen by shoplifters reflects a 14.7 percent increase over the value for the previous year. See Uniform Crime Report for 1979 compiled by the Pennsylvania State Police, Bureau of Research and Development. Obviously, in a time of rising unemployment and skyrocketing inflation, shoplifting is not a matter to be taken lightly.

construing statutes: Com. v. Abington Memorial Hospital, 478 Pa. 514, 387 A. 2d 440 (1978). We are, therefore, compelled to pursue the end which the General Assembly envisioned when it enacted the present day retail theft statute. Consequently, if defendant's summary conviction is valid, the manifest intent of the General Assembly dictates that the second offense (124 Criminal 1980) should be enhanced and treated as a second degree misdemeanor.

Defendant's summary conviction cannot be invalidated because of a lack of representation by counsel. In Pennsylvania, defendant had no right to be represented by counsel when she pled guilty to the summary offense of retail theft. Pa.R.Crim.P. 316 specifically addresses the assignment of counsel in summary cases. The rule provides:

"(a) In Summary Cases  Counsel shall be assigned in all summary cases to all defendants who are without financial resources or who are otherwise unable to employ counsel *when there is a likelihood that imprisonment will be imposed."* (Emphasis supplied.)

It is clear then from this rule that there is no duty to assign counsel in a summary proceeding when there is no likelihood that defendant will be imprisoned. See also Com. v. Margittai-Thorpe, 8 D. & C. 3d 693 (1977), affirmed without opinion, 261 Pa. Superior Ct. 548, 396 A. 2d 39 (1978). Because we are unable to ascertain what was in the mind of District Justice Lyons when he accepted the guilty plea, we must assume from the fact that no imprisonment was imposed that the district justice ruled out the likelihood of imprisonment before accepting defendant's guilty plea, thereby dispos-

ing of any need to appoint counsel. Furthermore, Rule 316(a) has been amended a number of times since the legislature enacted the enhancement provisions of the retail theft law. Since the rule provides no limitation on the effect of an uncounseled plea, we must assume that in adopting the rule the court intended that an uncounseled plea, in conformity to the rule, was valid in all respects, i.e., as to the fine imposed and for use in statutes providing for *enhancement*. Any other construction would be unreasonable. We conclude that the summary conviction is valid and supports enhancement of 124 Criminal 1980 to a second degree misdemeanor.

Although the contention of the Commonwealth that the third offense here should be enhanced to a felony is not without merit, we do not see a need to address this question. The total value of items taken in the entire three offenses being less than $50, we are of the opinion that a finding of guilty for the offense contained in 315 Criminal 1980 will permit a sentence of sufficient severity if graded as a second degree misdemeanor. It is well settled that where an indictment charges a particular offense, defendant may be convicted of a lesser included offense: Com. v. Garcia, 474 Pa. 449, 378 A. 2d 1199 (1977). "The test for determining whether an offense is a lesser included offense is whether all the essential elements of the lesser offense are included in the greater offense." Com. v. Ostolaza, _____ Pa. Superior Ct. _____, _____, 406 A. 2d 1128, 1131 (1979). Obviously, the second degree misdemeanor retail theft is a lesser included offense of the felony retail theft, the only difference between the two being the grade of the offense. Therefore, defendant may be found guilty of a second degree misdemeanor on the charge to 315 Criminal 1980.

## ORDER

And now, July 21, 1980, for the reasons appearing in the opinion filed this date, defendant is hereby found guilty of a second degree misdemeanor for the offense contained in 124 Criminal 1980 and is similarly guilty of a second degree misdemeanor for the offense contained in 315 Criminal 1980. Defendant is directed to appear for sentencing at the call of the district attorney after receipt of a presentence report by the probation office.