## Eichenlaub v. Eichenlaub

*William E. Stockey*, for plaintiff.
*Arnold H. Cantor*, for defendant.

MUSMANNO, *J.*, July 13, 1983—Petitioner-wife, Linda Eichenlaub, and respondent-husband, Daniel W. Eichenlaub, were married on October 5, 1968. Three children were born of this marriage, namely Daron, Jason and Ryon.

On May 10, 1979, wife filed a petition for protection pursuant to the Protection From Abuse Act alleging that the husband was subjecting her and the children to physical abuse and threats, and was consuming large quantities of alcohol and drugs. Pursuant to this petition, a preliminary order was issued by this court, and a final hearing was set for May 17, 1979. On that date, a final hearing was held, resulting in an order which excluded husband from the marital residence for a period of 30 days and ordered him not to abuse the wife or their children. In addition, husband was granted partial custody of the parties' three minor children upon 24 hour notice to wife.

The parties were next before this court on a second protection from abuse petition filed by wife on January 18, 1982. Once again a preliminary exclusion order was signed and a final hearing was set for January 26, 1982. Wife alleged that husband had threatened her with death and assaulted her as the basis for this petition. On February 17, 1982 a final Protection From Abuse Act hearing was held which resulted in an order excluding husband from the marital residence for one year and again directing him not to abuse the wife and the children. Husband was further ordered to reimburse wife for costs in the amount of $105.

At the same hearing, the parties entered into a consent partial custody order which confirmed cus-

tody of the three children with wife and granted partial custody to husband on alternate weekends and on every Wednesday for specified periods of time.

The first contempt allegation arose on June 24, 1982. Wife filed a complaint for indirect criminal contempt of this court's February 17, 1982 order, accusing husband of entering the home in violation of said order and assaulting her. On June 29, 1982 a final contempt hearing was held at which time husband pled guilty to the charge of indirect criminal contempt and was ordered to pay a fine of $250 plus costs. Husband was also placed on 60 days probation.

Only a month later, the second alleged contempt arose. Wife filed a petition for rule to show cause why defendant should not be held in contempt and violation of probation. Wife alleged that the husband had threatened her life. On September 1, 1982, the parties executed a consent order in lieu of a hearing for contempt and violation of probation. Husband consented to a total exclusion from the residence,[1] and was ordered to undergo psychiatric counseling with reports of said counseling to be provided to the court and counsel within 90 days. The parties further agreed that husband's partial custody with the children would only take place outside the marital home, and that wife would deliver the children for said partial custody.

Again, a month later, the third contempt allegation arose. Husband and wife filed cross petitions for contempt. Wife alleged that husband was in contempt of the order of court of September 1, 1982, and husband alleged that wife was in violation of

---

1. The prior order of February 17, 1982 remained in full force and effect. This consent order was made only to effectuate a settlement.

the partial custody provisions of the same order. After hearing, the court entered an order discharging both rules for contempt, and dismissed both petitions. Each of the parties, however, was ordered to strictly comply with the order of September 1, 1982.

On January 26, 1983, wife filed a petition to extend the protection from abuse order of February 17, 1982, and a hearing on the petition was set for February 11, 1983. Wife alleged that she remained in fear of her life and that defendant had failed to seek counseling as called for by prior orders of the court. On February 11, 1983 a hearing was held on the petition, and the protection from abuse order of February 17, 1982 was extended for one year.

The fourth contempt allegation arose on April 2, 1983. Husband was arrested, and wife filed a complaint for indirect criminal contempt. The basis of this charge was an assault on the wife by the husband. At the hearing on April 14, 1983, husband, through counsel, requested a jury trial on the charge of indirect criminal contempt. This motion was denied by the court.

The evidence at this hearing showed that husband followed wife home from work and confronted her in the driveway of the marital residence at approximately 3:00 a.m. Wife testified that husband screamed at her and struck her in the face and upper body several times, even after she fell to the ground. As a result of this beating, wife suffered facial bruises and contusions, two black eyes, and a fractured sternum requiring hospitalization from April 2, 1983 to April 8, 1983. The testimony also showed that husband threatened wife on at least four occasions during her hospitalization. Accordingly, husband was found guilty of indirect criminal contempt and was sentenced to serve 90 days in the Allegheny County jail.

On April 25, 1983 a petition to modify sentence was filed on husband's behalf, alleging that husband was under an order for support and was incarcerated, therefore he could not meet his support obligations. The petition requested that husband be placed on work release status. On May 2, 1983, this court denied the petition because husband failed to prove the availability of suitable work.

On May 9, 1983, husband appealed the denial of a jury trial to the Superior Court of Pennsylvania. Husband requested bond pending appeal.

On May 10, 1983, husband's parents posted their home as a property bond in the amount of $25,000 and defendant was released from custody pending the appeal.

The sole issue for determination, as raised by husband in his statement of matters complained of pursuant to Pa. R.A.P. 1925(b) is whether the provisions of the Protection From Abuse Act, 35 P.S. §10190(b) which deny the right to trial by jury on the charge of indirect criminal contempt are in violation of husband's rights under the Constitution of the Commonwealth of Pennsylvania and the Constitution of the United States.

The statute in question is a portion of the Protection From Abuse Act, 1976, Oct. 7, P.L. 1090, No. 218, §1 (35 P.S. §10181 et seq.). The sections governing contempt, 35 P.S. §10190(a)-(b), state:

"(a) Upon violation of a protection order or a court approved consent agreement the court may hold the defendant in indirect criminal contempt and punish him in accordance with law.

(b) Notwithstanding any provision of the law to the contrary any sentence for this contempt may include imprisonment up to six months or a fine not to exceed $1,000 or both and the defendant shall not have a right to a jury trial on such a charge."

The starting point for a consideration of husband's claim is the Statutory Construction Act of 1972, December 6, 1972, No. 290, §3 (1 Pa. C.S. §1501 et seq.). The act provides five presumptions to be used to ascertain the intent of the legislature. Of particular importance in the instant case is §1922(3) which provides:

"That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth."

This presumption as to legislative intent becomes even stronger when coupled with numerous cases which uniformly hold that statutes are presumed to be constitutional. Parker v. Children's Hospital of Phila., 483 Pa. 106, 394 A.2d 932 (1978); Com., Higher Ed. Assistance Agency v. Abington Memorial Hosp., 24 Pa. Commw. 352, 356 A.2d 837 (1976) aff'd, 478 Pa. 514, 387 A.2d 440 (1978); In Interest of Jones, 286 Pa. Super. 574, 429 A.2d 671 (1981) Kirk v. Unemployment Comp. Bd. of Review, 57 Pa. Commw. 92, 425 A.2d 1188 (1981); Picarello v. Com., 54 Pa. Commw. 252, 421 A.2d 477 (1980). Further, if there are any doubts as to the constitutionality of a statute, they must be resolved in favor of its constitutionality. Parker, supra.

In addition, it must be noted that the right to a jury trial is not absolute in all cases. As recently stated by the Supreme Court of Pennsylvania in Commonwealth v. Sorrell, 500 Pa. 355, 456 A.2d 1326 (1982):

"[T]he right to trial by jury is not a substantive right," but a right of procedure through which rights conferred by substantive law are enforced. Id. at 1328. (Citations omitted.)

A jury trial is required only for a defendant accused of a "serious" offense. U.S. Const. amend VI;

Pa. Const. Art. I, §§6 and 9; Duncan v. Louisiana, 391 U.S. 145 (1968).

This requirement is applicable to indirect criminal contempt cases. In Commonwealth v. Mayberry, 459 Pa. 91, 327 A.2d 86 (1974), our Supreme Court held:

"No exception to this constitutional first principle is made for criminal contempt, direct or indirect, because '[c]riminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both.' " citing, Bloom v. Illinois, 391 U.S. 194 at 201 (1968).

In Bloom, supra, which involved indirect criminal contempt, the court clearly states that:

"criminal contempt is not a crime of the sort that requires the right to a jury trial regardless of the penalty involved." Id. at 211.

The Supreme Court of Pennsylvania clearly defined the test for the requirement of a jury trial in Mayberry, supra, wherein it held:

"The question becomes whether the crime charged, criminal contempt or otherwise, is "serious." The test is clear. The decision of the Surpeme Court of the United States "have established a fixed dividing line between petty and serious offenses; those crimes carrying more than six months sentence are serious and those carrying less are petty crimes." Codispoti v. Pennsylvania, 418 U.S. 506, 512, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974)" Mayberry, at 89.

In the instant case, the sentence to be considered for the "dividing line" test is the permissible sentence. Mayberry supra, citing, Baldwin v. New York, 399 U.S. 66 (1970). Title 35 P.S. §10190(b) provides the following permissible sentence:

"Notwithstanding any provision of the law to the contrary any sentence for this contempt may include imprisonment up to six months. . ."

Husband was sentenced to 90 days for his last contempt in this case. It is clear, therefore, that the permissible and the actual sentences in this case do not require a jury trial.

Husband also claims that the denial of the right to jury trial contained in the Protection From Abuse Act, 35 P.S. §10190(b) et seq. is violative of equal protection of law guaranteed under the Fourteenth Amendment to the United States Constitution. Specifically, husband claims that 42 Pa. C.S. §4135[2] requires a jury trial for indirect criminal contempt for violation of a "restraining order or injunction", hence, he must be afforded the right to a jury trial for indirect criminal contempt for his alleged violation of the order of September 1, 1982 under the Protection From Abuse Act.

Husband's claim, however, misconstrues the meaning of "equal protection" under the Fourteenth Amendment. The differences between the types of indirect criminal contempt specified by 42 Pa. C.S. §4136 and that of 35 P.S. §10190(a) are clear. Title 42 Pa. C.S. §4136 is concerned with situations where an "injunction or restraining order" is violated. Title 35 P.S. §10190 is concerned only with violations of orders issued to prevent physical abuse between family members.

The emergency nature of the judicial process pursuant to the Protection From Abuse Act requires

---

2. On December 20, 1982, the legislature amended 42 Pa. C.S. §4135 and renumbered it to §4136. 1982, Dec. 20, P.L. 1409, No. 326 Art. II, §201, effective in 60 days (42 Pa. C.S. §4136).

that this court act swiftly to prevent continued abuse and deal with contempt situations in an expeditious manner lest the violation giving rise to the contempt become a criminal action for homicide. Faced with life and death situations, this court must utilize its expertise in such matters to enforce its orders without the time delay involved in a jury trial. To afford a jury trial in all instances of indirect criminal contempt for violation of a Protection From Abuse Act order would, in essence, wipe out the legislatively-created remedy and enforcement under said act.

The sheer volume of cases involving indirect criminal contempts under the Protection From Abuse Act[3] is in itself a difference between this type of indirect criminal contempt and that contemplated by 42 Pa. C.S. §4136. It is the unfortunate experience of this writer that violations of protection from abuse orders are all too common. Were this court required to provide a jury trial in every such case, realistic enforcement would be extremely difficult.

It is for these reasons, that the legislature wisely and purposefully drafted the Protection From Abuse Act to eliminate the right to a jury trial for violations of orders issued under the aegis of that act. The law is clear that not every "difference" or "discrimination" in the application of laws is a denial of equal

---

3. In Allegheny County alone, 968 PFA actions were filed in 1982 and the first four months of 1983 and 917 were disposed of by the Family Division of this court. Although these statistics were not considered in the decision in the instant case, the practical effect of requiring a jury trial on all indirect criminal contempt charges under the Protection From Abuse Act would be to completely crush the already overburdened courts of Allegheny County.

protection of law. If an application of the law is free from any "invidiously discriminatory purpose or effect," and there is some "rational basis" for the application, equal protection is not violated. Dandridge v. Williams, 397 U.S. 471 (1970) reh. den. 398 U.S. 914 (1970).

In the instant case, there are at least five such "rational bases" for the denial of the right to a jury trial under the Protection From Abuse Act, namely, the emergency nature of violations of such orders, the present physical abuse and menace, the volume of cases of this type, the need for efficient, expeditious enforcement of protection from abuse orders, and the expertise of our family division judges, in dealing with such cases. Thus, the Fourteenth Amendment guarantee of equal protection does not require a jury trial in indirect criminal contempt cases for violation of an order under the Protection From Abuse Act.

The husband was afforded all procedural safeguards attendant to a criminal proceeding. Husband was granted bail, was notified of the charges, had time to prepare a defense, and was represented by experienced counsel. Cipolla v. Cipolla, 264 Pa. Super. 53, 398 A.2d 1053 (1979). Further the uncontroverted evidence showed husband's guilt beyond a reasonable doubt. Indeed, husband did not appeal the finding of contempt.

In light of the presumption of constitutionality afforded to the statute, and the clear line of decisions delineating the right to a jury trial and the limitations thereon, it is evident that we must find the denial of a right to jury trial under 35 P.S. § 10190(b) constitutionally permissible. Accordingly, this court entered the order of April 14, 1983.