544 A.2d 965

**COMMONWEALTH of Pennsylvania**

v.

**Robert Franklin MOROCCO, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 26, 1987.

Filed June 8, 1988.

Reargument Denied Aug. 5, 1988.

368

Joseph B. Policicchio, Somerset, for appellant.

James B. Yelovich, District Attorney, Somerset, for Com., appellee.

Before WIEAND, McEWEN and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the order below denying appellant's petition under the Post Conviction Hearing Act (PCHA), 42 Pa.C.S.A. §§ 9541–9551. Appellant contends that trial counsel was ineffective for (1) proceeding to select a jury without appellant being present; (2) failing to move to suppress certain business records introduced by the Com-

monwealth; (3) failing to offer two letters into evidence; and (4) reporting ready for trial even though he had failed to verify the availability of an essential defense witness. For the reasons that follow, we vacate the order below and remand for a new trial.

On January 28, 1983, following a jury trial, appellant was found guilty of misapplication of entrusted property, 18 Pa.C.S.A. § 4113(a), and tampering with public records, *id.* § 4911(a)(1). Appellant was later sentenced to a five-year term of probation. The judgment of sentence was affirmed by this Court on May 17, 1985. *See Commonwealth v. Morocco,* 345 Pa.Super. 619, 496 A.2d 853 (1985). In 1986, appellant filed a *pro se* PCHA petition. Present counsel was appointed and on October 14, 1986, a hearing was held on the petition. On May 19, 1987, the court denied the petition, and this appeal followed.

■ On appeal, appellant raises four claims of ineffective assistance of trial counsel. The determination whether counsel rendered ineffective assistance is arrived at through a two-prong test. First, we must ascertain whether the issue underlying the claim of ineffectiveness has arguable merit. *Commonwealth v. Buehl,* 510 Pa. 363, 378, 508 A.2d 1167, 1174 (1986). This requirement is based upon the principle that we will not find counsel ineffective for failing to pursue a frivolous claim or strategy. *Commonwealth v. Parker,* 503 Pa. 336, 341, 469 A.2d 582, 584 (1982). Second, if appellant's claim does have arguable merit, we must determine whether "the course chosen by counsel had some reasonable basis designed to serve the best interests of the client." *Commonwealth v. Buehl, supra* (citing *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 605, 235 A.2d 349, 353 (1967)).

■ If our review of the record reveals that counsel was ineffective, we then must determine whether appellant has demonstrated that counsel's ineffectiveness worked to his or her prejudice. *Commonwealth v. Pierce,* 515 Pa. 153, 159, 527 A.2d 973, 976 (1987). To determine whether appellant was prejudiced, our Supreme Court adopted the test

announced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Commonwealth v. Pierce, supra.* Under *Strickland*, to prove that counsel's ineffectiveness resulted in prejudice, an appellant must show that the error was "so serious as to deprive [him or her] of a fair trial, a trial whose result was reliable." *Strickland v. Washington, supra* at 686, 104 S.Ct. at 2063–2064.

Appellant first contends that counsel was ineffective for "failing to notify appellant of the time and place of jury selection, thereby causing appellant to be absent during said jury selection; and counsel was ineffective by proceeding to select a jury without the presence of appellant." After carefully reviewing the record and the briefs submitted by the parties, we conclude that the PCHA court has properly disposed of this issue in its well-reasoned opinion.

Appellant next contends that trial counsel was ineffective for failing to move to suppress business records that were introduced by the Commonwealth. Appellant notes that, with regard to the tampering with public records charge, the Commonwealth's theory was that certain expense vouchers that appellant submitted were for days on which internal agency records showed appellant to have been marked on vacation, on holiday, or simply "off". To prove its theory, the Commonwealth, without objection by trial counsel, introduced semi-monthly time reports and cumulative leave reports that were maintained by the Somerset County Office on Aging.[1] Appellant argues that these reports were not admissible as business records of the Agency because they were not "validated" by the agency.[2]

1. At all times relevant to this appeal, appellant was the Executive Director of the Somerset County Office on Aging, and the charges against him related to his misuse of a travel account maintained by the Agency.

2. In his brief, appellant describes the "validation" process as follows: [T]he semi-monthly reports and the cumulative leave records were to be verified or validated at the end of the year by sending a letter of verification to each employee at the end of each year. If the employee did not object to the verification letter, then the information on the daily log, the semi-monthly report and the cumulative

Because these documents did not qualify as business records, appellant contends, trial counsel was ineffective for failing to object to their admission. We disagree.

In this Commonwealth, the admissibility of business records is governed by statute. 42 Pa.C.S.A. § 6108(b) provides that,

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

*Id.* The purpose of this legislation is

to merely require that the basic integrity of the record keeping is established. Where it can be shown that the entries were made with sufficient contemporaneousness to assure accuracy and that they were made pursuant to the business practices and not influenced by the litigation in which they are being introduced, a sufficient indicia of reliability is provided to overcome their hearsay nature.

*In re Estate of Indyk*, 488 Pa. 567, 572, 413 A.2d 371, 373 (1979) (footnote omitted). "Whether a document should be admitted under the 'business record' exception is within the discretionary power of the trial court provided such is exercised within the bounds of [§ 6108]." *Thomas v. Allegheny & Eastern Coal Co.*, 309 Pa.Super. 333, 340, 455 A.2d 637, 640 (1982).

leave record would stand as to that employee and the records were "valid" records of the Agency as they related to that employee. If the employee objected to the verified letter, then the records were adjusted accordingly. Judith G. Dill, who was in charge of such verification process, testified at the PCHA hearing that no such letter of verification was sent to Appellant for year 1981.... Therefore, it is contended that the semi-monthly time reports and cumulative leave records submitted by the Commonwealth at trial were not verified or validated records of the Agency.
Brief of Appellant at 18.

█ Appellant does not dispute that the semi-monthly reports and cumulative leave reports at issue here were made "in the regular course of business at or near the time of the act, condition or event" as required by § 6108(b). Instead, appellant invites us to conclude that, even if the records satisfy the § 6108 reliability test, they are rendered unreliable, and hence inadmissible, simply because the Agency, as an internal matter, seeks to *further* verify the information by use of "validation letters." Appellant can cite no authority in support of this proposition, and we fail to see any reason why the *absence* of such a superfluous test should in any way impeach the reliability of a record made and kept in accordance with the standards outlined in § 6108.[3] At best, the absence of the validation letters provided counsel with a basis to attack the weight that should be attached to these records. Accordingly, we agree with the PCHA court's conclusion that these records were admissible. Because the records were admissible, we must conclude that appellant's claim that trial counsel was ineffective for failing to object to their admission does not possess arguable merit, and appellant is not entitled to relief on this ground.

█ As a corollary to this argument, appellant also contends that counsel was ineffective for failing to call the former personnel officer of the Agency, Judy Dill, to testify. Appellant argues that "Mrs. Dill would have testified that Appellant was not sent a validation letter for [the] year 1981. Such testimony would have either had a direct bearing on the admissibility of the records as business records or would have attacked the accurateness of the same as being unaudited, unchecked and unverified records." Brief of Appellant at 20. For the reasons we have noted in the text above, Mrs. Dill's testimony regarding the validation

3. We emphasize that appellant's argument is based not upon a defect in the creation of the semi-monthly reports and cumulative annual leave reports, but upon a defect in the procedure governing *validation letters.* Certainly, had the Commonwealth attempted to introduce *validation letters* that were not issued in accordance with Agency procedures, appellant's argument might possess merit.

letters would not have been relevant to a determination whether the records were *admissible*.

Moreover, we note that, at trial, both appellant and Anastasia Day, appellant's administrative assistant, testified that the semi-monthly reports and cumulative annual leave reports were not likely to reflect accurately appellant's attendance habits. For example, Mrs. Day testified as follows:

Q. Now, who are these [semi-monthly time] records set up to keep track of?

A. The employees of the Agency.

Q. Now, would they keep an accurate record of [appellant's] whereabouts?

A. No.

Q. Why not?

A. Well, many times he was out of the office and they would have no way of knowing where he was. And they would just have no way to keep accurate records of that.

N.T. January 27, 1983 at 512. Thus, through the presentation of this type of testimony, trial counsel did "attack" the "accuracy" of the business records. We therefore agree with the PCHA court that "[t]he testimony of Judy Dill would have been merely cumulative to the testimony at trial regarding [the] method of preparation of the Agency's records." PCHA Court Opinion at 39–40. Accordingly, we hold that appellant's claim that counsel was ineffective for failing to call Mrs. Dill does not possess arguable merit, and appellant is not entitled to relief on this ground.

Appellant next contends that trial counsel was ineffective for failing to offer two letters into evidence. Appellant notes that, to prove the misapplication of entrusted property charge, the Commonwealth had to show that appellant disposed of property in a manner that appellant *knew* was unlawful.[4] The charge derived from appellant's alleged

4. The relevant portion of 18 Pa.C.S.A. § 4113(a) provides as follows:

misuse of a travel account maintained by the Somerset County Office on Aging. Appellant was the Executive Director of that Office. The letters in question were written in December, 1981, by Richard Bronakoski, Field Representative of the State Department of Aging, and Terrence Spaar, Director of the Bureau of Administrative Services, and related to their investigation of the travel account. Appellant claims that "[t]he letters indicated that the State Department of Aging felt that the Somerset program was being properly administered; that any additional investigation by the Department was not necessary; and that, therefore, the manner in which the travel account had been administered by Appellant was proper." Brief for Appellant at 27. Appellant argues that these letters were "admissible on the issue of whether or not he *knew* that the manner in which he administered the account was unlawful." *Id.* Appellant concludes that counsel was ineffective for failing to introduce these letters to negate the knowledge element. We disagree.

■ The acts that formed the basis for the instant charges occurred *before* Bronakoski and Spaar conducted their investigation and wrote the disputed letters. Thus, as the Commonwealth correctly notes in its brief on appeal, "the letters cannot be probative on [the issue of appellant's knowledge concerning the lawfulness of his actions]. The conduct for which [appellant] stands convicted occurred in the first half of 1981. The subject letters were not written until six months later. Therefore, the letters are completely irrelevant to [appellant's] knowledge *at the time of the acts charged.*" Brief for Appellee at 6 (emphasis supplied). *See also* PCHA Court Opinion at 52 ("since the letters are

§ 4113. **Misapplication of entrusted property and property of government or financial institutions**

(a) **Offense defined.**—A person commits an offense if he applies or disposes of property that has been entrusted to him as a fiduciary, or property of the government or of a financial institution, in a manner which he knows is unlawful and involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted.

*Id.* § 4113(a).

dated in December, 1981, [appellant's] state of mind theory of admissibility is inapplicable."). We agree with the PCHA court and the Commonwealth that, because these letters were written *after* the criminal conduct at issue, they are not probative of appellant's knowledge of the lawfulness of his conduct at the time he committed the acts. Because the letters would not be admissible under the theory proposed by appellant, appellant's claim that counsel was ineffective for failing to introduce the letters lacks arguable merit, and appellant is not entitled to relief on this ground.

Appellant last contends that counsel was ineffective for reporting ready for trial even though he had failed to ascertain whether an essential defense witness would be available to testify at trial. This claim derives from counsel's failure to timely subpoena County Commissioner Albert Hay to appear on appellant's behalf. Appellant argues that Hay was "the single most important witness to [appellant]", as trial counsel recognized, and thus counsel's failure to assure Hay's appearance constituted ineffective assistance. The facts related to this claim were summarized by the PCHA court as follows:

At the scheduling conference on January 12, 1983, trial counsel appeared and reported ready for trial. According to Somerset County Local Rules, such a report advises the court that the party and his witnesses are ready and available for trial. Trial counsel, however, had not checked with Commissioner Hay to determine whether he would be available or not....

Trial counsel further explained that he waited for the trial schedule to be published on January 13th or January 14th, before issuing subpoenas, so that the witnesses could be subpoenaed to appear on the date trial was to begin, rather than for attendance at the entire trial session beginning January 17th. As a result, subpoenas were not prepared until the week of January 17th, and, in fact, were not ready for service until Friday, January 21st.... [W]hen [appellant] attempted to serve Commissioner Hay·on Friday, January 21st, he found that Com-

missioner Hay was on vacation, outside the jurisdiction, and that he, therefore, would not be present for trial.

At the pretrial conference on January 24, trial counsel requested a continuance of the trial because of Commissioner Hay's unavailability....

PCHA Court Opinion at 41–42. During that pretrial conference, the following exchange occurred between the court and defense counsel:

MR. BARBIN: .... I should have subpoenaed [Commissioner Hay] two months ago, so I was sure he would be here and I could have subpoenaed him for January 17th two months ago, but I didn't.

*    *    *    *    *    *

THE COURT: If I had to resolve this motion on the basis of whether or not your witness is important to you, I really have insufficient knowledge of the case to evaluate your statement on that subject against [A.D.A.] Yelovich's. And therefore, I would give the defendant the benefit of the doubt and I would grant your continuance.

The problem is, it's difficult to accept your statement in light of the fact that you did nothing for weeks. You were notified in January—in fact you knew long before that; when you got a copy of the trial list even—that the trial would be the week of the 17th or the week of the 24th.

I have the schedule for last week in front of me. And on Wednesday at 1:30 the scheduling conference was scheduled. You got a copy of that schedule.

MR. BARBIN: Uh–huh.

THE COURT: It says: This conference is held for the purpose of assigning trial dates certain for each criminal case for trial at this term, and to facilitate advance jury selection. Accordingly, trial counsel in all such cases must be present to make a final report of trial readiness.

BY BARBIN: I was present, Your Honor.

*    *    *    *    *    *

THE COURT: A readiness report means that trial counsel has made the necessary recent inquiries of parties and witnesses in advance so that the report will be reliable.

Now, that's what we expected and that's what we thought we got. I don't see how you can justify waiting till Friday.

N.T. January 24, 1983 at 29–30. The trial court then denied appellant's motion for continuance, based solely on defense counsel's failure to discover Commissioner Hay's unavailability until shortly before trial. The trial court's ruling was approved without discussion by this Court on direct appeal. In that appeal, trial counsel's effectiveness was not considered.

In ruling on appellant's ineffectiveness claim, the PCHA court reviewed the continuance scenario as follows:

[Appellant] and trial counsel felt Commissioner Hay's testimony to be crucial and so advised the court at the January 24th pretrial conference. The trial court refused the requested continuance, however, principally because of what the trial court perceived as trial counsel's lack of diligence in preparing and serving the subpoena on Hay, and because trial counsel had advised the court at the January 12th scheduling conference that the defense was ready for trial.

We can not find that trial counsel was ineffective for waiting until Friday, January 21st, to subpoena witnesses. The record does not indicate exactly when Hay left for vacation and it is uncertain, therefore, exactly when service of the subpoena would have been effective. Who is to say under the circumstances of this case when a subpoena should be served.

We do agree, however, that the failure of trial counsel to confirm the availability of those defense witnesses he thought to be important, prior to the scheduling conference of January 12th, constitutes ineffectiveness of counsel. At that scheduling conference, trial counsel had represented to the court that the defense and witnesses were ready and available. We understand that trial coun-

sel honestly believed that Commissioner Hay would be present; in order to advise the court of readiness, however, key witness[es]' availability should be confirmed.

We also must find that failure to confirm the availability of the witness Hay had no reasonable basis in trial strategy.

PCHA Court Opinion at 44–45.

It seems readily apparent, therefore, that the PCHA court deemed counsel ineffective. Moreover, this finding is amply supported by the record facts set forth above. The defense request for a continuance of the trial had been denied solely because defense counsel advised the court that he was ready for trial when, in fact, counsel had not made a reasonable effort to ascertain whether defense witnesses were available. When counsel subsequently learned that Commissioner Hay was out of the jurisdiction and would not return in time for the trial, a defense request for continuance was made, but it was denied because of counsel's lack of diligence. In light of these facts, we agree with the PCHA court that this claim of ineffective assistance possesses arguable merit. Moreover, we agree with the PCHA court that, under these circumstances, defense counsel's lack of diligence had no reasonable basis designed to serve the best interests of his client.

Despite its finding that appellant's claim possesses arguable merit and that counsel had no reasonable basis for his inaction, the PCHA court nevertheless concluded that appellant was not entitled to a new trial because he could not show that counsel's dereliction prejudiced him. Specifically, the court reasoned that appellant could not show that he was prejudiced because that issue has already been finally litigated on appellant's direct appeal. In reaching this conclusion, the court stated that "[w]hen deciding that the continuance was properly refused, the court en banc and Superior Court must have determined that Hay's testimony was not so crucial that his absence denied [appellant] a fair trial." PCHA Court Opinion at 46. We disagree. To be eligible for relief under the PCHA, a petitioner must prove,

*inter alia,* "[t]hat the error resulting in his conviction and sentence has not been finally litigated...." 42 Pa.C.S.A. § 9543(4). An issue is finally litigated if, *inter alia,* "[t]he Superior Court has ruled on the merits of the issue and the petitioner has knowingly and understandingly failed to avail himself of further appeals." *Id.* § 9544(a)(2). Moreover, "[t]here is a rebuttable presumption that a failure to appeal a ruling ... is a knowing and understanding failure." *Id.* § 9544(c). Finally, "[o]nce an issue has been finally litigated it may not be raised in a PCHA petition." *Commonwealth v. Senk,* 496 Pa. 630, 635, 437 A.2d 1218, 1220 (1981) (plurality opinion).

▪ Here, as we have noted above, the trial court refused to grant the request for a continuance *solely* because of trial counsel's lack of diligence in ascertaining the availability of Commissioner Hay. That ruling was approved without discussion by this Court in an unpublished two-page Memorandum. At no time, did the trial court or the Superior Court on review determine that Commissioner Hay's testimony was unimportant to the defense.[5] We therefore hold that the question of the importance of Commissioner Hay's testimony has not been finally litigated and, accordingly, the prior appeal to this Court cannot bar appellant from showing that he was prejudiced by counsel's failure to secure Hay's presence at trial.

▪ Turning now to appellant's specific argument regarding why Commissioner Hay's testimony was essential to his case, it is apparent that appellant was seriously prejudiced by Hay's unavailability. As recited in the opinion of the PCHA court, the absence of Commissioner Hay from the trial involving an alleged misuse of funds budgeted for the County Office on Aging rendered unavailable to the defense the following information:

Testimony regarding defendant's work patterns, specifically, that Hay was aware that defendant worked late at night many nights and on holidays. Defendant claimed

5. We note that the issue of counsel's ineffectiveness in occasioning the need to request a continuance was not raised in the direct appeal.

this testimony would lend credence to defendant's testimony that he, in fact, was working on the holiday for which a suspect voucher had been submitted.

Testimony that there were no county guidelines for administration of finances at the County Office on Aging, that it was the Executive Director's duty to make sure the funds were administered properly in accordance with state guidelines.

Testimony that the county requested the State Office on Aging to review the County Office's records, and that, after review, County Commissioner Hay received a letter stating that there were no irregularities and that the books were in proper order in defendant's office, according to the State's representative.

* * * * * *

Testimony from Commissioner Hay that defendant had worked on projects other than for the Area Office on Aging and that defendant had spent money from the travel advances for these other activities which were properly vouchered and spent.

Testimony about the background of a meeting on June 30, 1981, at which the Commonwealth asserted defendant was told to close the subject account.

Testimony regarding accusations against defendant made by a certain former employee of the County Office o[n] Aging, Bernard Bruner, and that all except one of these accusations were disregarded by the Commissioners.

Testimony that Commissioner Hay had approved a budget line item for travel expenses for the County Office On Aging which amounted to $6,000.00 in 1981, which according to defendant, was very close to the amount of money actually spent.

Testimony regarding the suspension and termination of defendant since Commissioner Hay was the person who authored the suspension letter.

PCHA Court Opinion at 42–44 (footnote omitted). This testimony would provide important corroboration to appel-

lant's contention that he did not misuse the travel account in question. Accordingly, we conclude that appellant was prejudiced by his counsel's lack of diligence in failing to secure the presence of Commissioner Hay at trial. *See Commonwealth v. Pierce, supra.*

To summarize, it appears that a trial continuance was denied because of trial counsel's lack of diligence. That same lack of diligence required that appellant proceed to trial without the material testimony of Commissioner Hay, which may have resulted in a different verdict. A new trial is therefore required.[6]

For the foregoing reasons, we vacate the order below and remand for a new trial.

Order vacated and case remanded for a new trial. Jurisdiction is relinquished.

---

6. The PCHA court suggests that Commissioner Hay is now deceased. This fact should not affect appellant's right to a new trial. Hay's testimony at appellant's preliminary hearing was recorded, and appellant may be able to use the same in lieu of the commissioner's testimony upon a retrial.