630 A.2d 869

COMMONWEALTH of Pennsylvania, Appellee,

v.

Kevin ROBERTS, Appellant.

Superior Court of Pennsylvania.

Submitted March 8, 1993.

Filed June 30, 1993.

Reargument Denied Sept. 17, 1993.

Shelly Stark, Public Defender, Pittsburgh, for appellant.

Kevin McCarthy, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CIRILLO, HUDOCK and BROSKY, JJ.

HUDOCK, Judge:

This is an appeal from the judgment of sentence imposed upon Appellant after he was found guilty, at the conclusion of a nonjury trial, of robbery,[1] criminal conspiracy,[2] and possession of instruments of crime.[3] Appellant was sentenced to consecutive terms of not less than two (2) years nor more than five (5) years on the charge of robbery, and ten (10) years probation on the charge of criminal conspiracy. A verdict of guilty without further penalty was ordered on the possession

1. 18 Pa.C.S. § 3701.
2. 18 Pa.C.S. § 903.
3. 18 Pa.C.S. § 907.

of instruments of crime conviction. Subsequently, Appellant filed a motion for reconsideration of sentence which was denied. This direct appeal followed. For the following reasons, we vacate the judgment of sentence and remand for proceedings consistent with this opinion.

The facts leading to these convictions may be summarized as follows: On October 30, 1991, at approximately 1:30 a.m., Sean Robertson, a student at the University of Pittsburgh, was walking home on South Bouquet Street in the Oakland section of Pittsburgh, Pennsylvania, after visiting his girlfriend in her dormitory room on campus. Shortly after passing the University of Pittsburgh School of Law, and near a well-lighted parking lot, Robertson was approached from behind by two black males. One of the black males, Kevin Roberts (hereinafter, "Appellant"), took a few steps in front of Robertson and then turned around. Appellant, simultaneously, pulled out a kitchen knife with a 10–12 inch blade and a wooden handle and ordered Robertson to give him his money. While Appellant spoke to Robertson, Appellant's confederate, John Thompson, proceeded to check Robertson's jacket and pants pockets. He removed from Robertson a pack of Viceroy cigarettes, keys and Robertson's student I.D. The keys were subsequently placed back in Robertson's pocket. Robertson was not carrying any money. While this incident was occurring, Officer Curtis Smith, of the University of Pittsburgh Campus Police Department, passed the three individuals on the street in his marked patrol unit. He slowed down to observe what was transpiring as he was suspicious of the very close proximity of the three individuals and the distressed look on Robertson's face. Officer Smith proceeded down the street, turned his vehicle around and returned to where he had seen the three individuals standing. At this point, Appellant and his friend began to run away from Robertson. Robertson flagged down the police vehicle and related to Officer Smith what had just happened. He also described the individuals and the items which had been taken from him. Officer Smith immediately pursued Appellant and Thompson across a University parking lot, finally stopping them approximately

two minutes later on Oakland Avenue for questioning. Officer Smith recognized the two males as the individuals whom he had viewed only minutes earlier with Robertson. Robertson's cigarettes and student I.D. were found in Thompson's possession. The knife was later found approximately forty yards away in the parking lot which Appellant and Thompson had traversed. Appellant and Thompson were transported to the University of Pittsburgh Campus Police station where they were identified by Robertson and then subsequently delivered to the City of Pittsburgh Police.

On appeal, the sole issue raised by Appellant is whether trial counsel was ineffective for failing to move to suppress the identification of Appellant as the fruit of an illegal arrest.

Claims of ineffectiveness of counsel are subject to a three-part analysis:

First, it must be demonstrated that the underlying claim is of arguable merit. Next, it must be determined whether counsel's choice of action had some reasonable basis designed to effectuate his client's interests. Finally, a showing must be made of how counsel's choice of action prejudiced the client. . . . The law presumes that counsel was effective, so that the burden of establishing ineffectiveness rests squarely upon the defendant. [Citations omitted.]

*Commonwealth v. Nelson*, 389 Pa.Super. 417, 420, 567 A.2d 673, 676 (1989). To prove prejudice from the ineffectiveness, Appellant must show that counsel's errors had an adverse effect on the outcome of the trial. *Commonwealth v. Boyles*, 407 Pa.Super. 343, 358, 595 A.2d 1180, 1188 (1991), *alloc. den.*, 531 Pa. 651, 613 A.2d 556 (1992). "An appellant must show that the error was 'so serious as to deprive [him or her] of a fair trial, a trial whose result was reliable.'" *Boyles*, 595 A.2d at 1188 (*quoting Commonwealth v. Morocco*, 375 Pa.Super. 367, 371, 544 A.2d 965, 967 (1988), *alloc. den.*, 520 Pa. 615, 554 A.2d 508 (1989)). Furthermore, trial counsel cannot be found to have rendered ineffective assistance of counsel for failing to pursue a course of action that had no arguable merit. *Commonwealth v. Black*, 398 Pa.Super. 364, 365, 580 A.2d 1391,

1392 (1990), *alloc. den.*, 527 Pa. 628, 592 A.2d 1296 (1991). We shall address Appellant's claim of ineffectiveness keeping these standards in mind.

As noted above, Appellant contends that trial counsel rendered ineffective assistance of counsel for failing to file a motion to suppress the identification of Appellant which was made subsequent to an illegal arrest. Appellant argues that the arrest was illegal because Officer Smith, a campus police officer, acted beyond the limits of his jurisdiction in making the arrest, *as* both the incident in question and the arrest occurred off campus. Conversely, the Commonwealth contends that the events in question did occur on and/or immediately adjacent to University property. Commonwealth brief at p. 13. Accordingly, the Commonwealth concludes that Officer Smith had jurisdiction to effectuate the arrest of Appellant. In the alternative, the Commonwealth argues that, even if the events in question and the arrest occurred on the city streets and not on campus property, because of the noncontiguous nature of the University of Pittsburgh campus and because the layout of the campus necessitates that campus police drive on city streets among various private commercial enterprises and residential properties while on routine patrol, Officer Smith had an affirmative duty when he saw a felony committed on his patrol to pursue the perpetrators.

After examining the record and Appellant's argument, we are constrained to conclude that there is arguable merit in Appellant's contention that trial counsel was ineffective. *See* 71 P.S. § 646(h) ("Security and Campus Police shall exercise their powers and perform their duties only on the premises of the State colleges and universities, State aided or related colleges and universities and community colleges by or for which they are employed ... except, that Campus Police employed by State owned colleges and universities located in any municipalities, other than cities of the first class or second class, are authorized, in emergency situations occurring within the municipality, upon the request of the mayor or other executive authority and under the direction of the local law enforcement authorities, to exercise those powers and perform

those duties conferred pursuant to this section within the municipality for the limited purpose of aiding local authorities in emergency situations."); *Commonwealth v. Savage*, 403 Pa.Super. 446, 589 A.2d 696 (1991), *alloc. den.*, 529 Pa. 633, 600 A.2d 953 (campus police officer was without authority to stop and arrest driver whom officer observed run red light on street in adjoining borough while on patrol and parked on the university campus; suppression of evidence obtained as result of campus police officer's unlawful seizure of driver was appropriate). However, because the record is unclear as to whether the incident and/or arrest took place on university property, we cannot determine on the present state of the record whether Appellant was denied effective assistance of counsel. "When an arguable claim of ineffective assistance of counsel has been made, and there has been no evidentiary hearing in the [trial court] to permit the defendant to develop evidence on the record to support the claim, and to provide the Commonwealth an opportunity to rebut the claim, [the Superior] Court will remand for such a hearing." *Commonwealth v. Petras*, 368 Pa.Super. 372, 377, 534 A.2d 483, 485 (1987). *See also, Commonwealth v. McBride*, 391 Pa.Super. 113, 121, 570 A.2d 539, 543 (1990); *Commonwealth v. Copeland*, 381 Pa.Super. 382, 397, 554 A.2d 54, 61 (1988), *alloc. den.*, 523 Pa. 640, 565 A.2d 1165 (1989). Because this is the first time Appellant alleges ineffective assistance of counsel, no evidentiary hearing has been held in this case. Accordingly, an evidentiary hearing is necessary. Such a hearing will provide Appellant with an opportunity to prove that the incident did not take place on campus, that Officer Smith did not have the requisite jurisdiction to make the arrest, and that the subsequent identification would have been subject to suppression if his counsel had filed a motion to suppress it. A hearing will also provide the Commonwealth with the opportunity to prove, as it avers, that the incident and/or arrest did occur on university property or in such close proximity that the arresting officer had jurisdiction.[4]

4. The dissent concludes that 71 P.S. § 646 did not intend the absurd result of a campus police officer who views a felony in progress, while

Therefore, the judgment of sentence is vacated pending an evidentiary hearing to determine whether Appellant's contention that trial counsel was ineffective for failing to move to suppress the identification, which was the fruit of an illegal arrest, has merit. If it is determined that trial counsel was ineffective, and that Appellant was prejudiced thereby, a new trial must be granted. If counsel was not ineffective, however, the judgment of sentence may be reimposed. In remanding for such a determination, we decline to address the underlying merits of the action. We, note, however, that in the event it is found the incident and/or arrest did not occur on university property, we do not concede by remanding that an extraterritorial arrest was unwarranted under these circumstances.

The judgment of sentence is vacated and the case remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.

CIRILLO, J., files a dissenting opinion.

CIRILLO, Judge, dissenting.

I respectfully dissent. Under the unique facts presented here, remanding for an evidentiary hearing to determine whether or not the offense took place on the campus premises is unwarranted. I would find due to the liberal construction to be afforded in applying 71 P.S. § 646, that the General

---

patrolling a non-contingent college campus, to be without jurisdiction to apprehend the felon because of the location of where the felony takes place. We note, however, that the record reveals that Officer Smith did not view the actual robbery and did not at any time see Appellant accost the victim with a knife while his companion removed the victim's belongings from his pockets. Rather, the record indicates that Officer Smith, while passing the individuals in his patrol unit, saw a "suspicious" situation, specifically two black males in close proximity with a white male who appeared to be in distress. This situation prodded Officer Smith, after proceeding down the street, to turn his vehicle around and investigate. Only upon his return to the scene, and after the victim talked to him, did Officer Smith, in fact, become aware that a robbery had occurred and that apprehension of Appellant and his companion was warranted. At this time, the victim had reached safety and Appellant and his companion had fled.

Assembly did not intend such an absurd result as is considered by the majority—that a campus security officer on routine patrol, who, due to the geographic makeup of the campus must utilize public streets for ingress and egress, is possibly without jurisdiction to apprehend a felon while a felony is in progress depending on the location of where the felony takes place.

In construing legislation, this court must ascertain and effectuate the intention of the legislature. 1 Pa.C.S.A. § 1921(a). Since section 646 is not penal in nature, it must be liberally construed to effectuate its purpose and promote justice. 1 Pa.C.S.A. § 1928(c); *Commonwealth v. Holderman,* 284 Pa.Super. 161, 425 A.2d 752 (1981). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). The legislature does not intend a result that is absurd or impractical. 1 Pa.C.S.A. § 1922(1). A review of the text of section 646 reveals that it does not address the jurisdictional question in the instant case of whether campus security may apprehend a felon off campus while on routine patrol and utilizing public roadways of egress and ingress to effectuate the patrol.

Where the statutory definition is not explicit, we may ascertain the intention of the legislature by considering, among others, such factors as the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, the consequences of a particular interpretation and the contemporaneous legislative history of such statute. 1 Pa.C.S.A. § 1921(c); *Com., Higher Ed. Assistance v. Abington Memorial,* 478 Pa. 514, 387 A.2d 440 (1978). A review of the scant legislative history surrounding the enactment of section 646 reveals that the statute was promulgated to provide effective protection to the persons and property located within the campus and to relieve local authorities of the burden of supplying the service, *Holderman, supra; Commonwealth v. Mitchell,* 381 Pa.Super.

592, 554 A.2d 542 (1989), and to alleviate the legislature's concern over the delay that results from colleges and universities relying on local or state police for campus security. *Mitchell, supra.*

A thorough search reveals only four cases which interpret the jurisdictional restraint on campus security. In *Savage, supra,* the sole case cited by the majority, campus security intentionally usurped the power of the local police by concentrating their efforts on activities occurring at a local pub beyond the campus boundaries. Campus security went so far as to position the patrol car facing the pub and remained stationary until a violation occurred. While laying in wait, campus security witnessed Savage run a red light and gave chase. Once captured, Savage was also charged with driving under the influence of alcohol. Following his conviction of the two summary offenses, Savage appealed. A panel of this court, agreeing with the trial court, found that both the red light violation and the subsequent chase occurred off the campus premises, violating section 646, and subsequently the evidence obtained as a result of his arrest had to be suppressed.[1]

In *Holderman, supra,* a panel of this court was presented with the issue of whether campus security could make a summary arrest outside the campus boundaries where the initial offense occurred on the campus and where campus security made the arrest after hot pursuit of the offender. Finding that section 646 must be liberally construed, the panel concluded that the subsequent arrest off campus was lawful and that the legislature could not have intended to prohibit

1. Research discloses only one other case where an arrest off campus by campus security resulted in suppression of evidence. In *Commonwealth v. Dixon,* 226 Pa.Super. 569, 323 A.2d 55 (1974), the defendant was arrested for the summary offense of disorderly conduct on a public road adjoining the campus. No facts were offered as to whether security personnel were on routine patrol or had acted intentionally to usurp local authority. Also distinguishable from the instant case, was the fact that the parties in *Dixon* stipulated prior to trial that the arresting officer had no jurisdiction under the facts to make the arrest. *Id.* at 571, 323 A.2d at 56.

campus security from pursuing and arresting summary offenders fleeing campus.

Similarly, in *Mitchell, supra,* this court, again recognizing the liberal construction of the statute to effectuate its remedial purpose, held that the legislature could not have intended to limit the jurisdiction of campus security solely to educational and residential grounds, but also to commercial properties owned by the college or university which were used for investment purposes. The court in *Mitchell* realized that campus properties of "a college or university, especially when located within a municipality, may not be contiguous, but may be located in or constitute various sections of the municipality". *Mitchell,* 381 Pa.Super. at 602, 554 A.2d at 547. The court stated that to hold otherwise,

> we would be ignoring the layout and everyday operation of a college or university. We find the legislature would not have created a situation where it would have ignored the realities of the college or university campus ... We, therefore, conclude that "premises" and "grounds and buildings" within the statutory framework of 71 P.S. § 646(h) include, not only academic and residential areas, but also commercial property of a college or university used for investment purposes.

*Id.* While acknowledging that a campus may not be contiguous, but rather may be located within or constitute various sections of municipality, the panel did not specifically address the jurisdictional power of campus security to make an arrest on routine patrol which occurs between point "A," located on the campus, and during the drive on a public street while en route to point "B" which is also campus property, but located in another section of the municipality.

Thus, all these cases are readily distinguishable from the instant facts and establish that the situation presented here is one of first impression. Instantly, we have an officer on routine patrol, who due to the geographic nature of the

university campus must use routes of ingress and egress which, while may be adjacent to campus property, are not designated as campus owned roadways, who sees a felony in progress and then hotly pursues the suspects after being flagged down by the victim. These actions are in compliance with the legislative intent embodied in the statute governing the powers of the campus security to effect an arrest and do not usurp the powers of the municipal police authorities as is prohibited by 71 P.S. § 646.

I would find that an arrest that occurs on a public roadway which, due to the geographic make up of the campus must be used by campus security while performing routine patrol is lawful and consistent with the legislative intent. Further, such an activity naturally flows from the statutory meaning to be given to protection of campus grounds and premises. I find it absurd that the legislature could have intended that campus security while on routine patrol are powerless to act under such circumstances. Requiring campus security to contact campus dispatch who in turn must contact local authorities would waste crucial time and possibly result in physical injury to the victim. Here, campus security did not intentionally usurp local authority or somehow purposefully involve themselves in such conduct that would be out of the norm of the routine patrol. The officer happened upon a felony robbery in progress which included the defendant wielding a 10–12 inch kitchen knife at the victim. The victim was a student at the university, was walking home to his apartment and had just walked past the University of Pittsburgh Law School when he was attacked.

Unlike the cases cited above, the instant facts establish the urgency of the situation and at the very least that the attack occurred adjacent to the university campus. To hold that the location of the incident could jeopardize the arrest, where campus security are on routine patrol, undermines the legislative objective in promulgating the statute to protect persons and property and to alleviate the burden on local police

authority. *Mitchell, supra.* As such, I would affirm the judgment of sentence.