681 A.2d 1274

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Kevin ROBERTS, Appellee.**

Supreme Court of Pennsylvania.

Submitted June 27, 1994.

Decided July 31, 1996.

Robert E. Colville, Dist. Atty., Kevin F. McCarthy, Asst. Dist. Atty., for appellant.

Lester G. Nauhaus, Public Defender, Mitchell A. Kaufman, Asst. Public Defender, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO, and NEWMAN, JJ.

## OPINION

NIX, Chief Justice.

Following a bench trial, Appellee, Kevin Roberts, was convicted of robbery,[1] criminal conspiracy,[2] and possession of an instrument of crime.[3] The trial court denied Appellee's post-verdict motion to modify his sentence and sentenced Appellee to consecutive terms of two (2) to five (5) years' imprisonment for robbery and possession of an instrument of crime and ten (10) years' probation for criminal conspiracy.

On appeal to the Superior Court, Appellee argued that trial counsel was ineffective for failing to file a motion to suppress the victim's identification of him as the fruit of an illegal arrest. Appellee claimed that the arrest was illegal because the arresting officer, a state university campus police officer, lacked jurisdiction to lawfully arrest Appellee outside the physical boundaries of the university property. The Superior Court vacated the judgment of sentence, holding that there was arguable merit to Appellee's underlying claim and that his trial counsel should have filed a motion to suppress the victim's identification of Appellee since university campus police lack jurisdiction to arrest a person off university property. *Commonwealth v. Roberts,* 428 Pa.Super. 156, 630 A.2d 869 (1993). The Superior Court remanded the matter for an evidentiary hearing to establish whether the robbery and arrest took place on university property. *Id.*

1. 18 Pa.C.S. § 3701.

2. 18 Pa.C.S. § 903.

3. 18 Pa.C.S. § 907.

We granted the Commonwealth's petition for allowance of appeal to resolve the issue of whether an evidentiary hearing is needed to determine whether Appellee's trial counsel was ineffective for failing to move to suppress the victim's identification of Appellee on the basis that the state university campus police officer's arrest of Appellee outside the boundaries of the university property may have been unlawful. Because we find that the identification of Appellee by his victim was not the direct result of Appellee's arrest, regardless of its legality, we reverse the Superior Court's remand of this matter and affirm the trial court's judgment of sentence.

A summary of the evidence establishes that on October 30, 1991, at approximately 1:30 a.m., Appellee and a co-defendant robbed Sean Robertson, a University of Pittsburgh student, at knife point as he walked from campus to his apartment. The victim testified that as he was walking home, Appellee darted in front of him, pulled out a ten to twelve-inch blade kitchen knife from his pants and demanded the victim's money. After the victim responded that he had no money, Appellee's co-defendant checked the victim's jacket and pants' pockets, and took from the victim a pack of Viceroy cigarettes, keys and the victim's student identification. The co-defendant returned the victim's keys before fleeing but kept the victim's cigarettes and student identification. The victim further testified that the robbery occurred in a well-lit area and that the encounter lasted several minutes.

University of Pittsburgh Campus Police Officer Curtis Smith, testified that during the course of the robbery, he was on his routine patrol and passed three individuals on the street in a well-lit area near the university law school.[4] Officer Smith testified that the three looked suspicious because of the close manner in which they stood to one another. As he slowed his vehicle to get a closer look, he observed that the victim looked distressed. Consequently, Officer Smith drove approximately twenty-five to fifty yards down the street and then turned around to come back toward the three men. As

4. The victim testified that he did not attempt to get the officer's attention because Appellee threatened to cut him if he moved.

he approached, Appellee and the co-defendant ran towards Forbes Avenue. The victim informed Officer Smith that the two males had just robbed him at knife point. The victim described Appellee as fair complected with light eyes and wearing a red shirt and blue jeans. The victim described the co-defendant as darker skinned with a mustache, wearing a white shirt and blue jeans. The victim further informed Officer Smith that Appellee and his co-defendant took his student identification and a pack of Viceroy cigarettes.

As Officer Smith drove around the block searching for the robbers, he observed Appellee and his cohort crossing a university parking lot. Officer Smith then pulled his squad car in front of Appellee and the co-defendant and questioned them regarding their encounter with the victim. After searching them, he found the victim's Viceroy cigarettes and the victim's student identification in the co-defendant's possession. Officer Smith found the knife in the campus parking lot approximately forty yards away from where he stopped Appellee and his co-defendant. After arresting Appellee and his co-conspirator, Officer Smith transported them to the campus police station. The victim identified both Appellee and the co-defendant as the perpetrators at the Pittsburgh Campus Police station approximately fifteen minutes after his attack.[5] The victim also made a positive in-court identification of Appellee as his attacker.

At trial, Appellee testified that the co-defendant was the person who took the cigarettes and identification from the victim's pockets. Appellee, in contrast, claimed he did not threaten the victim in any way, but he did admit owning the knife which was found in the parking lot. He further admitted that he had the knife tucked into his pants when he was speaking with the victim, and that he intentionally dropped it to the ground upon seeing Officer Smith and his campus security vehicle.

5. Police subsequently transported Appellee and the co-defendant to the City of Pittsburgh Police station, as they were required to do, after processing the complaint at the campus station.

■ The law is well-settled in Pennsylvania that trial counsel is presumed to have been effective. *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981). In order to defeat this presumption and prove a claim of ineffectiveness, a claimant must demonstrate that: (1) the underlying claim is of arguable merit; (2) the particular course of conduct chosen by trial counsel did not have some reasonable basis designed to effectuate the claimant's interests; and (3) counsel's alleged ineffectiveness prejudiced the claimant. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). Counsel can never be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981).

■ Appellee contends that counsel was ineffective for failing to file a motion to suppress the victim's identification of him as the fruit of an illegal arrest. With respect to the merit of the underlying claim, we find that the victim's identification of Appellee is legally admissible because it was not the direct result of Appellee's arrest. In *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972), this Court was confronted with the issue of whether the appellant's arrest was illegal and, if so, whether the subsequent identification was tainted by the illegality. Although it was determined that the appellant's arrest was illegal, this Court nevertheless upheld the admissibility of an in-court identification as well as an out-of-court identification that occurred immediately after the appellant was arrested. In so holding, we observed that "[n]o law abiding society could tolerate a presumption that but for the illegal arrest the suspect would never have been required to face his accusors [sic]. Thus, . . . the only effect of the illegal arrest was to hasten the inevitable confrontation and not to influence its outcome." *Id.* at 264, 293 A.2d at 37.

Assuming *arguendo* that Officer Smith's arrest of Appellee was illegal in the instant case, the identification evidence is nonetheless admissible. The record reveals that an adequate and independent basis existed to support the victim's identification of Appellee. The victim testified that the lighting conditions were good at the time that he was approached by Appellee and the co-defendant. (R.R. at 25a). He also had

the opportunity to view the two men for a period of three to five minutes at a distance of only several feet. (R.R. at 26a–27a).

Based on the foregoing, it is apparent that the illegality of the arrest, if any, did not contribute to the knowledge of the witness nor to the accuracy of his identification. As such, we must conclude that counsel was not ineffective for failing to file a motion to suppress the identification of Appellee.

Accordingly, the Order of the Superior Court vacating the judgment of sentence and remanding the matter for an evidentiary hearing is reversed. The trial court's judgment of sentence is reinstated.

CASTILLE, J., files a concurring and dissenting opinion.

NIGRO, J., dissents.

CASTILLE, Justice, concurring and dissenting.

I agree with the result reached by the majority. However, I write separately because I believe that this Court should have resolved the issue upon which it granted allocatur, *to wit*, whether a duly appointed and qualified state university campus police officer can arrest a person outside the boundaries of the university property upon observing a crime occurring.

I agree with the majority opinion that the victim's identification of appellee as his attacker is admissible based upon this Court's decision in *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972). I further believe that the victim's identification of appellee is admissible on grounds that Officer Smith had lawful authority to arrest appellee. Title 71 P.S. § 646,[1] which governs the authority and jurisdiction of campus police, provides in pertinent part:

§ 646. (Adm.Code § 2416). **Capitol Police, Commonwealth Property Police and Campus Police**

[1]. 1929, Act of April 9, P.L. 177, No. 175, Art. XXIV, § 2416, 71 P.S. § 646, as amended by the Act of July 7, 1968, P.L. 297, No. 149, § 1, 71 P.S. § 646.

The Capitol Police ... and the Security or Campus Police of all State colleges and universities and community colleges shall have the power, and their duty shall be:

(a) To enforce good order in ... the grounds and buildings of all State colleges and universities, State aided or related colleges and universities and community colleges;

...

(e) To exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the cities of Harrisburg, Pittsburgh and Philadelphia, municipalities in Dauphin County where State buildings are located ...;

...

(h) To arrest any person who shall damage, mutilate or destroy the trees, plants, shrubbery, turf, grass-plots, benches, buildings, or *commit any other offense within* [ ... their respective jurisdictions].

Security and Campus Police shall exercise their powers and perform their duties only on the premises of the State colleges and universities, State aided or related colleges and universities and community colleges by or for which they are employed and only and after they have completed a course of training including crisis intervention training and riot control ...

71 P.S. § 646 (emphasis added).

Appellee contends that the final paragraph of 71 P.S. § 646 restricts the jurisdiction of campus police to the physical boundaries of university or college property only, therefore rendering unauthorized his arrest which he contends was made off of campus. Were I constrained to apply only this final paragraph of the statute to the facts of this case, appellee might present a compelling argument. However, I believe that this statute must be read in conjunction with the Municipal Police Jurisdiction Act, 42 Pa.C.S. § 8953, referenced under subsection (e) of 71 P.S. § 646. By so doing I conclude that a campus police officer has the power to make an extra-

territorial off-campus arrest under the circumstances of this case.

To determine which police powers campus police may exercise under subsection (e) of 71 P.S. § 646, it is necessary to turn to the Municipal Police Jurisdiction Act which provides in pertinent part:

(a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

* * *

(5) Where the officer is on official business and views an offense, or had probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S. § 8953(a)(5).

In matters involving statutory construction, we must ascertain and effectuate the intention of the legislature. 1 Pa.C.S. § 1921(a). Where, as here, a statute is not penal, it is to be construed liberally to effect its purpose and to promote justice. 1 Pa.C.S. § 1928(c). Where the words of a statute are ambiguous and unclear, we may consider factors such as the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, the consequences of a particular interpretation and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c); *Commonwealth, Higher Education Assistance Agency v. Abington Memorial Hospital,* 478 Pa. 514, 521, 387 A.2d 440, 444 (1978). We further assume that the legislature never intends an absurd result. 1 Pa.C.S. § 1922; *Zimmer-*

*man v. O'Bannon*, 497 Pa. 551, 555–556, 442 A.2d 674, 676–677 (1982).

The legislative history surrounding 71 P.S. § 646 reveals that the statute was enacted to provide effective police protection for property and persons within the state university and college campuses and to relieve the municipality or city where these institutions are located of the burden of policing state university and college campuses. *See* Senate Journal, p. 333 (June 3, 1968). To achieve this end, section 646(e) provides that campus police are vested with the same powers exercised by the police of the cities or municipalities in which the campus police are located. 71 P.S. § 646(e). *See also, Commonwealth v. Commonwealth, Pennsylvania Labor Relations Board*, 502 Pa. 7, 463 A.2d 409 (1983) (capitol police under subsection (e) shall enjoy the same powers and duties of police in the city or municipality in which they are currently serving); *see also, Commonwealth v. Pratti*, 530 Pa. 256, 608 A.2d 488 (1992) (arresting officer was on "official business" when he detained defendant outside his primary jurisdiction where officer was on patrol and travelling to his usual turn-around point located in another township at the time he heard an accident and proceeded to investigate); *Commonwealth v. Merchant*, 528 Pa. 161, 169, 595 A.2d 1135, 1139 (1991) (officers' detention of defendant outside their primary jurisdiction was authorized by Statewide Municipal Police Jurisdiction Act where officers' observation of defendant's erratic driving was during their routine travel outside their jurisdiction).

Hence, in determining whether Officer Smith could make an arrest outside his normal campus jurisdiction, we must consider whether the circumstances of appellee's case satisfy the criteria under the Act. Here, Officer Smith was on duty and conducting official university business.[2] While the officer was on duty, he was travelling his routine patrol route, and, due to the non-contiguous geographic make-up of the campus, uti-

2. Officer Smith testified that on October 30, 1991, he was working the eleven to seven shift and was patrolling in Oakland on South Bouquet Street located just past the Pittsburgh University School of Law and the Forbes Quadrangle which houses the campus police.

lized the public streets for ingress and egress to the university campus. As Officer Smith approached, appellee and his co-defendant ran. Officer Smith observed the suspects running across a university parking lot and pursued them, again, travelling on public roads since the university does not possess a contiguous boundary. Officer Smith ultimately detained appellee and his co-defendant across the street from the university parking lot at a location which was apparently just beyond the University of Pittsburgh Law School. Thus, pursuant to the combined meaning of 71 P.S. § 646 and 42 Pa.C.S. § 8953, read *in pari materia,* I conclude that campus police have the authority to make extra-territorial arrests when the campus officer is on official business, patrolling his usual route, and observes a crime such as in the instant case. *Pratti, supra; Merchant, supra.* To hold otherwise would allow a felon to escape arrest by a campus police officer simply by fleeing to a site off-campus where he would be immune from lawful arrest by the campus police. Lawfully appointed campus police officers do not have to turn a blind eye to crimes committed in their plain view while they are routinely conducting the university business. Such a result would defeat the legislature's intent and would adversely impact campus and student security by providing a safe haven for marauding criminals who could simply retreat off campus following their criminal conduct on campus.

Therefore, while I agree that the victim's identification of appellee was admissible regardless of the legality of the arrest, I also believe the victim's identification of appellee is legally admissible because Officer Smith had statutory authority to arrest appellee beyond the boundaries of the university. Hence, an evidentiary hearing to establish where the robbery and arrest took place is unwarranted.[3]

3. I also note that the Superior Court erred by remanding this matter for an evidentiary hearing to establish the location of the robbery and arrest where the trial record was unclear. In ineffective assistance of counsel claims, the defendant has the burden, either through the record as it exists at the time the claim is brought or by making the appropriate pleadings and offers of proof at an appropriate hearing, to establish that his claim is of arguable merit. *Commonwealth v. Pettus,* 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981) (counsel alleging ineffectiveness

must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective). In the instant case, appellee made no offer of proof regarding where the robbery and arrest occurred. Therefore, the Superior Court erred by remanding the case for an evidentiary hearing to create such a record. *Id.* (trial counsel will not be deemed ineffective for failing to gather evidence regarding defendant's amenability where the record fails to reveal facts suggesting that defendant is amenable to rehabilitation or special treatment).

Moreover, an appellate court should remand a matter for an evidentiary hearing when it is necessary to examine whether there was a reasonable basis for trial counsel's actions. *Commonwealth v. Turner,* 469 Pa. 319, 324, 365 A.2d 847, 849 (1976) (appellate court vacated the judgment of sentence and remanded for an evidentiary hearing where the record failed to reveal whether trial counsel's actions could have had a rational basis). Here, the Superior Court remanded this matter for an evidentiary hearing not to examine trial counsel's stewardship, but to establish whether the robbery and arrest occurred on or off campus. This was error.